**UNITED STATES of America**

·v.

**David Rex YEAMAN.**

**No. CRIM. A. 96–51–03.**

United States District Court,
E.D. Pennsylvania.

March 10, 1997.

---

Nancy E. Stuart, Hoyle, Morris & Kerr, Philadelphia, PA, John T. Kotelly, Frank C. Razzano, Dickstein, Shapiro & Morin, Washington, DC, for defendant.

Andrea Foulkes, U.S. Attorney's Office, Philadelphia, PA, for U.S.

## *MEMORANDUM*

NEWCOMER, District Judge.

Presently before this Court are defendant David Rex Yeaman's Motion to Strike Language, and the government's response thereto, and Yeaman's reply thereto, and the parties' supplemental memoranda thereto. For the following reasons, this Court will deny Yeaman's motion to strike language.

### I. Introduction

The indictment charges defendant David Rex Yeaman and his co-defendants with having conspired to manipulate the prices of five stocks and then leasing those stocks to offshore reinsurance companies for inclusion on their balance sheets as inflated assets.[1] Yeaman is charged with having a controlling influence over the issuers of three of the five stocks named in the indictment, namely, U.S. Card Investors, Inc. ("U.S. Card"), Omega Power, Inc. ("Omega"), and American Family Services, Inc. ("AFS"), through other companies Yeaman controlled. (Indictment at ¶ 2(r)). The indictment further alleges that Yeaman failed to disclose his prior securities law violations in documents filed with the SEC and NASD and/or provided to market makers, which were documents available to the investing public.

---

1. Count One of the indictment charges Yeaman and his codefendants with conspiracy to violate the wire fraud statute and the general anti-fraud provisions of the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"). 18 U.S.C. § 371; 18 U.S.C. §§ 1343, 2; 15 U.S.C. §§ 77q(a), 77x; 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b–5. Counts Two through Eight charge Yeaman and his codefendants with violating the wire fraud statute. 18 U.S.C. §§ 1343, 2. Counts Thirteen, Fifteen and Seventeen charge Yeaman with fraud in the offer and sale of U.S. Card Investors, Inc. stock, Omega Power, Inc. stock, and American Family Services, Inc. stock. 15 U.S.C. §§ 77q(a), 77x.

Yeaman moves to strike language from the indictment. Paragraph 6(*o*)(2) in the indictment alleges that Yeaman "did knowingly and intentionally cause documents to be held by market makers and filed with the SEC and NASD, which failed to disclose that defendant DAVID YEAMAN ... (2) previously had been found to have violated securities laws...." (Indictment at ¶ 6(*o*)(2)).[2] Yeaman argues that he would be prejudiced if the jury is given the indictment because the language in paragraph 6(*o*)(2) contains irrelevant allegations. Yeaman contends that such allegations are irrelevant because (1) he had no duty to disclose the previous findings of securities violations (2) and/or there is documentary evidence in the possession of the United States government showing that the duty was discharged.

The government responds that Yeaman's arguments are specious for the following reasons: (1) the requirement to disclose "material" information pervades the entire panoply of securities regulation and overrides the "guides" stated in Regulation S–K; (2) compliance with the guides in Regulations—especially when only purported compliance—cannot operate as a defense to violations of the anti-fraud provisions of the federal securities laws, especially in a criminal context; (3) the guides set forth in Regulation S–K relate only to registrants and not to other non-reporting companies whose stocks are publicly traded; (4) the five year provision in Regulation S–K is only a "guide" which does not set the outside limits on disclosure of historical information; (5) when Yeaman purported to make disclosure of prior securities laws violations, such disclosure was woefully inadequate; and (6) documents provided by Yeaman controlled companies to the NASD and to market makers to commence secondary trading markets contained material omissions by failing to disclose Yeaman's control over these stocks and his near 20–year long history as a securities violator.

In reply, Yeaman contends that the government's arguments are lacking in merit because (1) due process prohibits the government from imposing criminal liability under Rule 12b–20 in the face of a specific rule governing the disclosure of legal proceedings and (2) all relevant documents complied with Regulation S–K or Rule 15c2–11(a)(5).[3]

## II. Standard for Motion to Strike Language

■ Rule 7(d) of the Federal Rules of Criminal Procedure permits this Court to strike surplusage from the indictment upon defendant's motion. Fed.R.Crim.P. 7(d); *United States v. Moya–Gomez,* 860 F.2d 706, 762–63 (7th Cir.1988). The purpose of Rule 7(d) is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in the indictment. *United States v. Fahey,* 769 F.2d 829, 841–42 (1st Cir.1985); *United States v. Ramirez,* 710 F.2d 535, 544–45 (9th Cir.1983). The motion should not be granted unless it is plain that the allegations in the indictment are not relevant to the charge made or contain prejudicial matter. *Id.* (citations omitted).

■ Language is properly included in an indictment if it pertains to matters which the government will prove at trial. These matters need not be essential elements of the offense if they are "in a general sense rele-

---

**2.** In its response, the government lists eleven different "proceedings" that it contends Yeaman was required to disclose in filings with the United States Securities and Exchange Commission ("SEC") and the National Association of Securities Dealers, Inc. ("NASD"). The Court will only delve into the underlying facts of each proceeding to the extent necessary for the disposition of this motion.

**3.** In response to this Court's Order dated January 30, 1997, the parties have submitted supplemental briefs addressing the following issues: (1) whether the standard of disclosure adopted in the context of § 10(b) of the Exchange Act and Rule 10b–5 is applicable to the instant case in light of the Court's dismissal of all Counts in the Indictment that allege violations of 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b–5; 18 U.S.C. § 2; (2) whether Regulation S–K provides for disclosure beyond five years, as suggested by Securities Act Release Nos. 5758 (November 2, 1976) and 33–5949 (July 28, 1978), and if so, whether such a disclosure requirement would violate Yeaman's due process rights; and (3) whether Yeaman was the "subject of the proceedings" in events 6, 7, and 9 (as numbered in the government's response) as required by 17 C.F.R. § 229.401(f).

vant to the overall scheme charged," *United States v. Wecker*, 620 F.Supp. 1002, 1006 (D.Del.1985), or "contain relevant background information." *United States v. Hill*, 799 F.Supp. 86, 88–89 (D.Kan.1992). Furthermore, " '[i]f the language is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be.' " *Id.* at 88–89. Finally, a motion to strike language is addressed to the sound discretion of the trial court. *United States v. Gatto*, 746 F.Supp. 432, 455 (D.N.J.1990), *rev'd on other grounds*, 924 F.2d 491 (3d Cir.1991). (citations omitted).

### III. Discussion

In his motion, Yeaman argues that the language in paragraph 6(*o*)(2) prejudices him because it contains irrelevant allegations. More specifically, and raising broader issues, Yeaman contends that the language of paragraph 6(*o*)(2) must be stricken because he had no duty to disclose such former securities laws violations and/or that he did disclose the information required by relevant law. The government opposes Yeaman's position, arguing that Yeaman did have a duty to disclose such information under federal securities law and that Yeaman failed to fully disclose such information. In order to resolve this dispute, this Court must determine whether Yeaman had a duty to disclose, and if he did have a duty to disclose, whether he fully complied with his disclosure obligations.

■ Not surprisingly, Yeaman and the government offer two differing views with respect to Yeaman's duty to disclose information under federal securities law. The government contends that Yeaman has a duty to disclose all information which is "material,"

as defined by case law addressing the antifraud statutes of the federal securities laws.[4] In the alternative, the government contends that Yeaman also made certain misleading statements, which required him to make further disclosures, and that Yeaman failed to comply with the specific disclosure requirements of Regulation S–K and Rule 15c2–11. *See* 17 C.F.R. § 229.401; 17 C.F.R. § 15c2–11(a)(5).

In contrast, Yeaman contends that the general antifraud statutes of the federal securities laws do not impose a general duty to disclose all information that may be material. Instead, Yeaman contends that he is required to disclose only such information as required by specific statute, rule or regulation, namely, in this case, Regulation S–K and Rule 15c2–11. Thus, the questions posited at this point are whether the government's proposed standard or Yeaman's proposed standard of disclosure apply with respect to Yeaman's alleged past securities violations, and whether Yeaman complied with the proper standard of disclosure.

The principal Count of the indictment charges Yeaman with conspiracy to violate the wire fraud statute and Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b–5. Section 10(b), the central anti-fraud provision of the Exchange Act makes it unlawful "for any person directly or indirectly":

> To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as neces-

---

4. The government has articulated the test of "materiality" as follows:

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. * * * [T]o fulfill the materiality requirement[,] 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'

*TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757

(1976). The Supreme Court has explicitly adopted this standard of materiality in the context Section 10(b) of the Exchange Act and Rule 10b–5. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 232, 108 S.Ct. 978, 983–84, 99 L.Ed.2d 194 (1987). Admittedly, many courts have held that the proscriptions contained in Section 10(b) of the Exchange Act, Rule 10b–5, and Section 17(a) of the Securities Act are substantially the same. *See, e.g., SEC v. Maio*, 51 F.3d 623, 631 (7th Cir.1995). Thus, the standard of materiality as articulated above would apply in Section 17(a) cases.

sary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

Rule 10b–5 further defines the conduct prohibited under Section 10(b), making it unlawful:

(a) [t]o employ any device, scheme, or artifice to defraud,

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of business which operates as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

■ Indisputably, if a person makes a misrepresentation with respect to a material fact which is misleading, then there has been a violation of Section 10(b). *McCormick v. Fund American Cos.,* 26 F.3d 869, 876 (9th Cir.1994) (citations omitted). However, the more relevant inquiry here is whether a person has a general duty to disclose all material information in the absence of a specific duty to disclose. The majority of courts to have addressed this issue have correctly concluded that "in the case of an omission [of material fact], 'silence, absent a duty to disclose, is not misleading under Rule 10b–5.' " *See, e.g., U.S. SEC v. Fehn,* 97 F.3d 1276, 1289 (9th Cir.1996) (quoting *Basic,* 485 U.S. at 239 n. 17, 108 S.Ct. at 987 n. 17); *McCormick,* 26 F.3d at 875; *Staffin v. Greenberg,* 672 F.2d 1196, 1204 (3d Cir.1982) (holding, under Rule 10b–5, that there is no general duty of disclosure imposed on a corporation which would require it to disclose all material facts); *Roeder v. Alpha Industries, Inc.,* 814 F.2d 22 (1st Cir.1987) (holding that there is no affirmative duty to disclose all material information) (citations omitted). The Supreme Court has explicitly held that "[w]hen an allegation is based upon nondisclosure, there can be no fraud absent a duty to speak." *Chiarella v. United States,* 445 U.S. 222, 235, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980).

■ A specific duty to disclose material information has been found to exist in at least three situations: (1) when a corporate insider trades on confidential information, *Chiarella,* 445 U.S. at 235, 100 S.Ct. at 1118; (2) when a corporation or person does make a disclosure—whether it be voluntary or required—there is a duty to make it complete and accurate, *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 860–61, *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969); and (3) when a specific, rule or regulation requires such disclosure. With the exception of one case, this Court has failed to find case law which supports the government's general duty to disclose all material information. Thus, this Court, in agreement with the overwhelming majority of courts which have addressed this issue, rejects the government's general duty of disclosure standard. *See, e.g., Roeder,* 814 F.2d at 27 (citations omitted). As the Court of Appeals for the District of Columbia astutely explained in *Dirks v. SEC,* 681 F.2d 824, 837 (D.C.Cir. 1982), *rev'd on other grounds,* 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983), a duty to disclose attaches "only when a party has legal obligations other than a mere duty to comply with the antifraud proscriptions in the federal securities laws."

■ Although the preceding analysis addresses disclosure under Section 10(b) of the Exchange Act and Rule 10b–5, the language of those provisions closely track the language of Section 17(a) of the Securities Act. Although Rule 10b–5 is somewhat broader than Section 17(a) because it refers to "any person" rather than "purchaser," in the context of this case both proscriptions operate in a substantially similar manner. *See Maio,* 51 F.3d at 631; *Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522, 531 (7th Cir.1985). Thus, the interpretation of Section 17(a) is guided by principles articulated in Section 10(b) and Rule 10b–5 cases. Consequently, the duties of disclosure that are required in Section 10(b) and Rule 10b–5 cases would be required in Section 17(a) cases.

At this point in the Court's analysis, the relevant inquiry is whether Yeaman violated

one or all of the specific duties to disclose.[5] In its response, the government discusses eleven different proceedings that it claims Yeaman had a duty to disclose. Importantly, the government does not have to demonstrate that Yeaman had a duty to disclose all eleven proceedings in order to defeat Yeaman's motion. To the contrary, if the government can show that Yeaman failed to disclose even just one of the eleven proceedings that he was required to disclose by law, then Yeaman's motion should be denied. If Yeaman had a duty to disclose such proceeding(s), then the language contained in paragraph 6(o)(2) would clearly contain "information which the government hopes to properly prove at trial." In this context, the allegations in paragraph 6(o)(2) would be relevant to the charge of conspiracy to violate the general anti-fraud provisions of the Securities Act and the Exchange Act, and therefore Yeaman's Rule 7(d) motion could not be granted.

■ After reviewing all the papers submitted, it is evident that Yeaman failed to comply with specific duties to disclose. To begin, in April 1988 the Oregon Department of Insurance and Finance entered a cease and desist order against Yeaman and Capital General Corporation ("Capital General") for unregistered distributions of securities and for making false and misleading statements to state regulatory authorities in a "no-action" request. *In the Matter of Capital General Corp. and David Yeaman*, E7–49 (Oregon Dept. of Ins. and Fin., April 29, 1988).

Disclosures with respect to this proceeding appear in the annual reports on Form 10–K for U.S. Card and Omega, companies in which Yeaman served as a director and executive officer and for which Capital General was the parent company:

> No officer, director or promoter of the registrant has any outstanding judgments, injunctions, indictments, or lawsuits involving any securities matter which is required to be disclosed herein except that on April 29, 1988, the Securities Section, Department of Insurance and Finance, State of Oregon, fined respondents Capital General

Corporation, parent of registrant, Iridium, Inc., and David R. Yeaman, $2,500 for requesting a "no-action" letter pursuant to which Capital General would distribute certain gift shares. No shares were ever distributed. The order further denied the respondents any exemptions pursuant to Oregon law and the respondents were ordered to cease and desist violating Chapter 50 of the Oregon Securities Law. The Respondents position is that they violated no law by merely requesting the State of Oregon for a "no-action" letter, never receiving it and not making any gift distributions in the State.

This purported disclosure by Yeaman failed to satisfy the standards of Regulation S–K. Nowhere in this disclosure are the findings and conclusions of the hearing officer mentioned. The hearing officer, in the request for "no-action," found that Yeaman failed to state material information: that Capital General was subject to a Utah suspension order on a related matter, a fact the hearing officer found material, because "in the securities regulatory system, an applicant's recent disciplinary history is always material;" that Iridium (the company for which no-action was being sought) was a shell company with no assets, liabilities or business history; that Yeaman had a "nationwide plan" to take advantage of what he termed a "loophole" in the law to transform a private company into a public one, sell its holdings to the public without registration, and profit from trading in the secondary market; and that, whereas Yeaman claimed that he "merely wanted to make a charitable gift" and "reward past association and loyalty[,] ... in fact [Yeaman and Capital General] were seeking to avoid registration, create an illusory market, and secure a monetary benefit to themselves, all without making a economic contribution to the capital formation process...." (Govt's Resp. at 14–15).

Indisputably, failure to disclose such information was material misleading. The anti-fraud provisions of federal securities laws, which Yeaman is charged with conspiring to violate, impose a duty to speak when there

---

5. The Court, of course, reserves all evidentiary issues which may arise with respect to Yeaman's prior securities violations and related proceedings.

has been an affirmative statement that will be rendered materially misleading by the failure to provide the necessary additional information. *See* 15 U.S.C. § 77q(a)(2); 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. Indeed, once Yeaman and Capital General made an affirmative statement with respect to this proceeding, they had a duty to disclose all material facts so as to not make their previous disclosures misleading.

Additionally, the disclosure in the annual 10–K reports for U.S. Card and Omega did not reveal the outcome of the state proceeding. The disclosure in the annual report for these two companies implies, if not states, that Yeaman and Capital General were unjustly fined and ordered to cease and desist simply for making a no-action request. In reality, they were fined and subjected to such an order because Yeaman and Capital General had violated state securities laws by making false and misleading statements to the state regulatory agency in connection with their request. (Govt's Resp. at Ex. 4). There is a vast difference between the two versions. Clearly, the disclosure provided was hardly enough.

Further, the disclosure provided also failed to satisfy the standard of Rule 12b–20 of the Exchange Act. 17 C.F.R. § 240.12b–20. This rule provides that once disclosure has been made, the issuer must be sure to add all other and further material information needed to insure that the disclosures, which have been made, are not materially misleading. Rule 12b–20 applies to all "required statements," which encompasses the statements required by Regulation S–K. As stated above, the statements with respect to the Oregon proceeding were misleading, thus Yeaman and Capital General had a duty to add all other and further material information to insure that their previous disclosures were not materially misleading. As previously mentioned, Yeaman and Capital General failed to make such additional disclosures. Thus, they violated the duty of disclosure mandated by Rule 12b–20.

The Court, however, rejects the government's argument that Yeaman and Capital were required to disclose every other instance in which they were the subject of a state or federal proceeding. The government claims that the annual reports were materially misleading without such information. The government contends that the disclosures made tended to negate any inference or implication that Yeaman or Capital General had ever previously been the subject of any federal or state securities law proceedings. However, a fair reading of the disclosures made by Yeaman and Capital General lead this Court to conclude that such disclosures did not imply that Yeaman and/or Capital General had ever previously been the subject of any federal or state securities law proceedings.[6] Therefore, Yeaman and Capital General were not obligated to make additional disclosures.

Yeaman argues that the government exceeds the scope of the indictment in arguing that the disclosures of the 1988 Oregon proceeding were inadequate. Yeaman contends that paragraph 6(*o*)(2) merely charges a failure to disclose, not inadequate disclosure. This argument is without merit. Yeaman's argument, if accepted, would stand the disclosure requirements of the federal securities laws on their head. If Yeaman's argument is correct, no person could ever be prosecuted for failing to disclose past securities laws violations if that person made some disclosure, no matter how woefully inadequate that disclosure was. This Court rightfully refuses to accept such a proposition.

■ Yeaman next argues that Rule 12b–20 cannot require him to make additional disclosures beyond those contained in Regulation S–K because such a requirement would deprive him of his right to due process. Yeaman vigorously contends that a person of ordinary intelligence reading Regulation S–K would believe that it governs matters to be disclosed with respect to certain legal proceedings. Yeaman submits that Regulation S–K does not state that, in addition to the disclosure found therein, Rule 12b–20 also must be complied with in order to stay within the bounds of law. Yeaman states that the government cannot seek to impose a greater duty to disclose, then that which is imposed

---

6. *See supra* p. 379 for the specific disclosure in dispute here.

by Regulation S–K, by reference to a general catchall regulation because to do so would violate due process since he was not given fair notice of the standard by which he should judge his conduct.[7] However, Yeaman's argument misses the mark.

Yeaman fails to understand when and under what circumstances Rule 12b–20 of the Exchange Act applies. This rule comes into play in the case of affirmative misrepresentations. In this case, Rule 12b–20 required Yeaman to provide additional and further disclosures where he made partial but incomplete disclosures about certain proceedings, for example, as was true of his incomplete and materially misleading disclosure in the annual reports about the Oregon proceeding.

Yeaman's due process rights are not violated by imposing upon him the disclosure requirements of Rule 12b–20. Importantly, there is no conflict between what is required to be disclosed under either Regulation S–K and Rule 12b–20. In the first instance, Regulation S–K requires a person to make disclosures with respect to certain legal proceedings. This Regulation is unambiguous and provides Yeaman with fair notice of what is required of him. Rule 12b–20 merely supplements Regulation S–K by requiring a person who has provided such information in "a statement or report ... [to] add[ ] such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not misleading." Rule 12b–20 clearly provides a person with fair notice as to what the law requires of him. In this case, Regulation S–K required Yeaman to make such disclosure with respect to certain legal proceedings. However, Yeaman was required to supplement his initial disclosure with such further material information as was necessary to make this disclosure not misleading because his initial disclosure pursuant to Regulation S–K was inadequate in that it was misleading. Yeaman's due process rights are not violated by the imposition of the clear and unambiguous requirements of Rule 12b–20, which surely gave him fair notice as to what the law required him to do.

■ Besides failing to fully disclose all material information with respect to the Oregon proceeding, it appears, contingent upon the government offering proof at trial, that Yeaman failed to disclose proceedings 6, 7 and 9.[8] Yeaman argues that he was not

---

**7.** In making his argument, Yeaman relies on *United States v. Matthews*, 787 F.2d 38, 49 (2d Cir.1986) and *United States v. Crop Growers Corp.*, 954 F.Supp. 335, 344–45 (D.D.C. 1997). It is should be noted that the holding of *Crop Growers* is inapplicable to the facts of this case. The *Crop Growers* court rejected the application of Rule 12b–20 because that rule cannot, in the first instance, impose a duty to speak where none otherwise existed. In this case, Regulation S–K imposed upon Yeaman, in the first instance, the duty to speak. Rule 12b–20 merely supplemented this primary duty. Moreover, the court in *Crop Growers* did not address the issue raised herein: whether, once there has been some disclosure, the defendant can fail to provide the whole truth by holding up Regulation S–K as circumscribing the requirement in Rule 12b–20 to provide all the necessary material information to ensure that the disclosure which has been provided is not misleading.

**8.** Proceeding No. 6, *In the Matter of Amenity, Inc.*, Case No. SD 86–11 (Utah Sec.Adv.Bd., Feb. 18, 1987), was a proceeding against Capital General. In that case, the Utah Securities Board held a hearing for purposes of receiving evidence of the intent of Capital General "and its principals" as to the distribution of Amenity stock. The Utah Securities Board found that the distribution of Amenity stock "was done with the intent to circumvent or frustrate" the purposes of the registration provisions of the Utah Securities Act. (Govt's Resp. at Exs. 9, 10).

Proceeding No. 7, *In the Matter of H & B Carriers, Inc., et al.*, Case No. 87–09–28–01 (USAB, Apr. 15, 1988), nominally was also against Capital General. On January 20, 1988, the Utah Securities Board issued a final order suspending all transaction exemptions with respect to 46 other Capital General issuers. The Utah Securities Board found that under the Utah Securities Code, "the gifting of those securities [by Capital General] constituted a disposition for value and the sale of a security" in violation of the registration requirements of the Utah Securities Code. H & B Carriers was incorporated in Utah initially as Y Travel, which Yeaman and Jeri Peterson had incorporated. Moreover, H & B Carriers was initially capitalized when Capital General transferred $2000 to it in exchange for common stock and further capitalized when Capital General "gifted" 700 to 1,000 shares to individuals. (Govt's Resp. at Ex. 8).

Proceeding No. 9 involved a SEC administrative action against National Stock Transfer ("NST"), the transfer agent for the issuers created by Capital General. On September 27, 1988,

required to disclose such proceedings because he was not "the subject of" these proceedings. Item 401(f)(3)–(4) of Regulation S–K require registrants to disclose if any of their directors or officers were "the subject of" certain legal proceedings. 17 C.F.R. § 229.401(f)(3)–(4). Yeaman contends that these provisions only refer to persons who were "named" in the proceedings. Yeaman's argument, however, is without merit. Although Item 401(f)(2) refers to "named subject," Item 401(f)(3) and (4) merely refer to "the subject of," which connotes a broader meaning then "named subject." Surely, if (f)(3) and (f)(4) meant only "named subject," the SEC could have explicitly stated so, as it did in (f)(2). Thus, Yeaman had a duty to disclose proceedings 6, 7 and 9, if he was "the subject of" those proceedings.

The government alleges that it possesses evidence that will show that, at the time of proceedings 6, 7 and 9, Yeaman and Peterson were the directors of Capital General and respectively held the offices of president and vice president. Moreover, the government contends that it will prove that in 1990, Yeaman owned more than 90% of the stock of Capital General by virtue of his ownership interest and through Yeaman Enterprises, a family corporation owned by his children and his mother. Further, the government alleges that Yeaman also owns and controls NST through Capital General, and Yeaman, who was still president at the time of the proceeding against NST in 1988, already was or became a director of NST.

Additionally, the government alleges that NST can be deemed an affiliate of Capital General through Yeaman. An "affiliate" is defined in Rule 405 of the Securities Act as follows:

> An "affiliate" of, or person "affiliated" with, a specified person, is a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified.

17 C.F.R. § 230.405. The government alleges that it possesses evidence that NST and Capital General are "affiliates" because Capital General through stock ownership controls NST and Yeaman is a director of NST. If the government can produce such evidence at trial, then it would appear that NST and Capital General would be affiliates.

Thus, if the government at trial can prove these allegations with respect to Yeaman's relationship with the abovementioned entities, then there would be no question that Yeaman was the "subject of" proceedings 6, 7 and 9 either as a named party or through corporations he controlled or with which he was affiliated. Thus, contingent on evidence being produced at trial, the Court concludes that Yeaman failed to disclose proceedings 6, 7 and 9.

█ With respect to proceeding 11,[9] Yeaman also failed to comply with a specific duty to disclose. To begin, it is irrelevant that Regulation S–K and Item 103 may have not required disclosure of this proceeding.[10]

---

the SEC entered an Order Instituting Administrative Proceedings, Making Findings and Imposing Remedial Sanctions against NST. The SEC found violations of various transfer agent provisions under the Exchange Act, including those governing lost and stolen securities, fingerprinting, amendments to FORM TA–1, annual reporting, recording keeping, internal accounting controls and prompt posting of certificate detail to the master security holder files. The SEC ordered that NST be censured and also that NST undertake to establish and maintain procedures to assure that the above violations do not recur. *See* Exchange Act Release No. 26120 (Sept. 27, 1988); 41 SEC. Docket 1499 (Oct. 11, 1988); 1988 WL 240356(SEC).

**9.** On July 22, 1993, after a five year investigation, the SEC ordered Yeaman and Capital General to permanently cease and desist from committing

or causing further violations of Sections 5(a) and (c) and 17(a) of the Securities Act and Sections 10(b) and 13(g) of the Exchange Act, and Rules 10b–5, 12b–20 and 13d1(c) thereunder. The SEC additionally ordered the revocation of the registration of the common stock of 24 issuers, finding, *inter alia*, that registration statements on Forms 10 under the Exchange Act contained materially false and misleading statements. *In the Matter of Capital General Corp.*, Release Nos. 33–7008, 34–32669, 54 SEC Docket (CCH) 1322 (July 23, 1993).

**10.** Item 103 requires disclosure of any material pending legal proceedings to which the registrant or any of its subsidiaries is a party or any of its subsidiaries is a party or of which any of their property is the subject, including proceedings known to be contemplated by governmental authorities. 17 C.F.R. § 229.103. Yeaman con-

Yeaman had a specific duty to disclose such further additional information to make his previous disclosures not misleading. Item 3, "Legal Proceedings," in the annual 10–K forms for both Omega and U.S. Card states:

> Other than described above, neither the Registrant nor any of its officers or directors, to their best knowledge, is a party to any material legal proceeding or litigation which would impact the operations of the Registrant, and such persons know of no material legal proceeding, judgments entered, legal actions or litigation contemplated or threatened which would impair operation of the Registrant in the future.

These statements are materially misleading. Indeed, at the time these statements were written in or about March 1990 for the period ending December 31, 1989, both Yeaman and Capital General had been the subject of an SEC investigation for over two years (since 1987). While the precise outcome of the litigation with the SEC may not have been known, there was a strong possibility in 1990 that, contrary to the statements in the annual reports, the SEC litigation could impact the operations of U.S. Card and Omega, companies on whose behalf the disclosures were being made.[11] Thus, Yeaman violated a spe-cific duty to disclose by failing to disclose proceeding 11 in the annual 10–Ks.[12]

With respect to proceedings 1, 2, and 3, Yeaman did not improperly fail to disclose these proceedings because he was under no specific duty to disclose. The government argues that Regulation S–K required these proceedings to be disclosed. The government, however, incorrectly relies on Regulation S–K.

 The plain language of Item 401(f) of Regulation S–K explicitly requires the disclosure of specified legal proceedings that both occurred during the previous five years and are material.[13] It appears that the conjunctive language of Item 401(f) unambiguously shows that both materiality and temporal proximity are necessary in order for disclosure to be required. However, as the government correctly notes, Securities Act Releases numbers 5758 and 5949 indicate that Item 401 was intended only as a "guide," and that "events occurring outside this period may be material and should be disclosed." *See* Securities Act Release No. 5949, 1978 SEC LEXIS 1031, at *24, 1978 WL 14845 (July 28, 1978); Securities Act Release No. 5758, 1976 SEC LEXIS 484, at

tends that Item 103 did not require disclosure of the on-going SEC investigation on the annual 10–K forms of Omega and U.S. Card because the government failed to demonstrate that either Omega or U.S. Card were known to be eventual parties to any contemplated government proceeding. However, the SEC had informed Yeaman that he and Capital General were under investigation by the SEC. Since Yeaman is allegedly a director and executive officer of both U.S. Card and Omega and Capital General is allegedly the parent corporation of U.S. Card and Omega, there is a strong argument that Item 3, standing alone, mandated disclosure of proceeding 11 on their annual 10–K forms.

11. Indeed, U.S. Card and Omega were among the issuers whose registrations were revoked pursuant to separate offers of settlement. Among other things, the SEC order found that the Forms 10 filed by the Capital General issuers omitted entirely the disclosure required concerning the Utah violations by Yeaman and Capital General and were materially false and misleading in the description of the Oregon violations.

12. Yeaman also argues that he should not have been required to disclose proceeding 11 because letters sent by the SEC stated that its inquiry "should not be construed as an indication ...

that any violations of law have occurred, nor should it be considered as a reflection upon any person, entity or security." (Def.'s Reply at Ex. B). This argument, however, falls short. This statement merely indicates that at the time is was made, the Commission or its staff had not made a determination that laws had been violated. The statement should not lead a reasonable reader to believe that violations of law could not be found upon conclusion of the SEC's investigation. Thus, this letter from the SEC does not help Yeaman.

13. The relevant portion of Item 401(f) reads as follows:

> (f) Involvement in certain legal proceedings. Describe any of the following events that occurred during the past five years *and* that are material to an evaluation of the ability or integrity of any director, person nominated to become a director or executive officer of the registrant.

17 C.F.R. § 229.401(f) (emphasis added). These disclosure requirements apply not only to officers and directors, but also extend to promoters and control persons of registrants not subject to the reporting requirements of the Exchange Act for the prior 12 months. 17 C.F.R. § 229.401(g).

*4, 1976 WL 15989 (Nov. 2, 1976). From these SEC interpretations, the government argues that although the proceedings in dispute fall outside the five year period required by the specific language of Item 401(f), Yeaman was under a duty to disclose because such proceedings are material. The government's argument must fail for the following reasons.

As a general rule, courts "defer to an agency's consistent interpretation of its own regulation unless it is 'plainly erroneous or inconsistent with the regulation.'" *Sekula v. FDIC*, 39 F.3d 448, 453 (3d Cir.1994) (quoting *Bowles v. Seminole Rock and Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). Nonetheless, "this deference does not permit us to defer to an 'interpretation' ... that strains 'the plain and natural meaning of words ...'" *Director, Office of Workers' Compensation Programs v. Mangifest*, 826 F.2d 1318, 1324 (3d Cir.1987), and is "tempered by our duty to independently insure that the agency's interpretation comports with the language it has adopted." *Director, Office of Workers' Compensation Programs v. Gardner*, 882 F.2d 67, 70 (3d Cir.1989). In sum, a court "cannot accord more deference to the ... interpretation of the regulation than to the actual regulation." *Director, Office of Workers' Compensation Programs v. Eastern Associated Coal Corp.*, 54 F.3d 141, 149 (3d Cir.1995).

With these principles in mind, the Court rejects the SEC's interpretation as inconsistent with the plain language of Regulation S–K itself, reaching this conclusion is not difficult. The plain language of Regulation S–K, without ambiguity, explicitly states that the specified legal proceedings must *both* have occurred within the previous five years *and* be material in order for disclosure to be required. Release numbers 5949 and 5758, however, suggest the direct opposite of what the plain language of the regulation require. Such an interpretation is inconsistent with the plain meaning of the language of Item

401(f), which the Court finds to be an unambiguous item.

Additionally, the fact that the SEC interpreted Item 401(f) twenty years ago when promulgating it does not make deference to the interpretation appropriate. The Third Circuit stated in *Eastern Associated Coal* that:

> [a]lthough the Director claims that she consistently has applied the same policy for twenty years, she is not permitted to imply language that simply does not exist.... Her interpretation strains the "plain and natural meaning" of the text. To reach such a result would require consideration of factors far beyond the actual regulation.

54 F.3d at 149 (citation omitted). The reasoning from *Eastern Associated Coal* is instructive for this case. Although the SEC has consistently interpreted Item 401(f) to require disclosure beyond five years, this interpretation strains the plain and natural meaning of the text. Thus, this interpretation is entitled to no deference, and as such, there is no disclosure required by Item 401(f) which reaches beyond the five years explicitly stated in the text.[14] Consequently, Yeaman had no duty to disclose proceedings 1–3 because they were outside the five-year period.

The Court also notes that a reading of Item 401(f) which requires disclosure beyond five years imposes considerable constitutional problems in a criminal prosecution. The Fifth Amendment to the United States Constitution provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. A person is deprived of due process if he is prosecuted without having been given fair notice that his conduct was forbidden. *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811–12, 98 L.Ed. 989 (1954). There are considerable doubts as to whether Item 401(f) with its attendant Releases give a

---

14. It should be noted that the SEC can, of course, always amend the regulation so that is comports with its desired objectives. Indeed, originally Item 401(f) mandated a 10 year period. However, to ease the reporting burden on issuers, in 1978 the period was reduced to five years. Thus, the SEC is fully capable of amending its regulation when it wants to achieve a desired result.

person fair notice that his conduct is forbidden by statute.

In *United States v. Matthews*, 787 F.2d 38 (2d Cir.1986), the government prosecuted a defendant for proxy violations for failing to disclose in proxy materials information not explicitly required by Schedule 14A. The Second Circuit, however, reversed the defendant's conviction, holding that "at least so long as [the information at issue] is not required to be disclosed by any rule lawfully promulgated by the SEC, nondisclosure of such [information] cannot be the basis of a criminal prosecution." *Id.* at 49. It rested this holding in part on "the obvious due process implications that would arise from permitting a conviction to stand in the absence of clearer notice as to what disclosures are required" in the area of qualitative management conduct. *Id.*

In this case, even if certain Releases suggest that specified legal proceedings beyond five years old are required to be disclosed, they are not required to be disclosed by any rule lawfully promulgated by the SEC. Indeed, the imposition of such a disclosure requirement, despite the lack of such a requirement in a rule, would surely violate Yeaman's right to due process. Regulation S–K does not give fair notice to an individual that they could be prosecuted for failing to disclose all material proceedings beyond five years.[15] Therefore, these additional due process considerations direct the Court to conclude that Yeaman did not have a duty to disclose proceedings 1–3.

■ With respect to proceedings 4, 5 and 10, Yeaman did not have a duty to disclose. The government primarily argues that Yeaman had a duty to disclose these proceedings because they were material. As stated previously, there is no general duty to disclose all material information. Thus, Yeaman would not have had to disclose proceedings 4,

5 and 10 merely because they were material. Moreover, the government cannot demonstrate that Yeaman was under some specific duty to disclose these proceedings. The Court thus finds that Yeaman cannot be prosecuted for failing to disclose proceedings 4, 5 and 10.

■ Finally, the Court addresses whether Yeaman failed to comply with the specific disclosure requirements of Rule 15c2–11. Form 2–11, required by Rule 15c2–11 of the Exchange Act, 17 C.F.R. § 240.15c2–11, is filed with NASD for the purpose of obtaining approval for "listing" and trading of stock either in the "pink sheets" or on the OTC Bulletin Board. The information provided on these forms constitute the basis for commencing a trading market and assessing the price at which the stocks will be traded. When seeking to establish trading markets in the stocks of U.S. Card, Omega and AFS, it is alleged that Yeaman prepared or caused to be prepared for those companies Form 2–11.[16]

The government alleges that Yeaman violated the antifraud provisions of the federal securities laws by failing to disclose in these Forms 2–11 the following information. With respect to Forms 2–11 for U.S Card and Omega, the government alleges that these forms failed to identify Yeaman as a control person and failed to disclose his prior securities laws violations for the past 20 years. With respect to Form 2–11 for AFS, the government asserts that this form, and disclosure packages provided to market makers, failed to disclose Yeaman's disciplinary history. The government claims that these were material omissions, and thus actionable under the general antifraud provisions. Yeaman contends that U.S. Card, Omega and AFS did not breach a duty to disclose information about him because they fully com-

---

15. Finally, the rule of lenity would compel the Court to conclude that Item 401(f) does not require disclosure beyond five years. *See Dowling v. United States*, 473 U.S. 207, 229, 105 S.Ct. 3127, 3139, 87 L.Ed.2d 152 (1985) (stating that federal courts have long applied the " 'time-honored interpretive guideline' that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity' ") (citations omitted).

16. It should be noted that AFS is a non-registrant and nonreporting company under the federal securities laws, and thus Regulation S–K does not apply to it. Despite not being subject to the disclosure requirements of Regulation S–K, AFS is subject to the disclosure requirements of Rule 15c2–11, as are both U.S. Card and Omega.

plied with the disclosure requirements of Rule 15c2–11(a)(5).

The Court finds, agreeing with Yeaman, that U.S. Card, Omega and AFS did not breach any duty to disclose. Importantly, the government does not refute Yeaman's contention that U.S. Card, Omega and AFS complied with Rule 15c2–11(a)(5). The government probably does not refute this contention because it appears that these companies did comply with the specific requirements of Rule 15c2–11.

The government instead relies on the reasoning of *In re New Allied Development Corp.*, Exchange Act Release No. 37990, 1996 WL 683705 (Nov. 26, 1996), for its argument that AFS, U.S. Card and Omega were required to disclose that Yeaman was a control person and that Yeaman had an extensive history of securities laws violations. In *New Allied Development*, it was alleged that there were material omissions in Forms 2–11 because these forms failed to indicate that one of the parties, Grady Sanders, maintained a control position in New Allied and failed to set forth his prior disciplinary history. The SEC, in its opinion, found that these omissions in the disclosure statements to market makers were material, false and misleading. Accordingly, the SEC held that Sanders had wilfully violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act.

The government's reliance on *New Allied* is misplaced. Although the SEC in *New Allied* concluded that the disclosure requirements of Rule 15c2–11 were violated, nowhere in its opinion does the SEC cite to a specific provision which was violated. Instead, it appears that the SEC summarily concluded that Rule 15c2–11 was violated because such information was material. Indeed, it appears that the SEC relied on a standard of disclosure that requires the disclosure of all material information, rather then relying on the specific requirements of Rule 15c2–11. However, as stated above, there is no general duty to disclose all material information. Therefore, to the extent that *New Allied* relies on a general duty to disclose all material information, this Court rejects *New Allied's* reasoning and result.

*New Allied* is also strikingly inapposite to this case in that it was merely an administrative action. In this case, Yeaman is being criminally prosecuted for allegedly violating securities laws. Due process considerations are implicated here because the government is not arguing that particular provisions of Rule 15c2–11 were violated; instead, the government is arguing that Yeaman failed to satisfy his duty to disclose by failing to disclose all material information in the Forms 2–11. Under the government's standard, the problem of fair notice arises because Yeaman did not have fair notice as to what conduct was prohibited by law. Indeed, Yeaman complied with Rule 15c2–11(a)(5), and as stated previously, there is no general duty to disclose all material information. The government cannot now attempt to prosecute Yeaman for failing to comply with some ambiguous duty to disclose all material information. Surely, such a prosecution would violate the fair notice requirement of due process.

Since U.S. Card, Omega and AFS did comply with Rule 15c2–11(a)(5) and the government cannot point to any other specific duty to disclose, the Court concludes that these companies did not breach any duty to disclose any information about David Yeaman.

### IV. Conclusion

Accordingly, based on the foregoing reasons, Yeaman's motion to strike language is dismissed. The government has demonstrated that Yeaman failed to disclose certain information for which he had a duty to disclose. Therefore, the language in paragraph 6(o)(2) is relevant to the charges in the indictment and is information which the government hopes to properly prove at trial, and thus cannot be considered surplusage under Rule 7(d) of the Federal Rules of Criminal Procedure.

AND IT IS SO ORDERED.

### ORDER

AND NOW, this 10th day of March, 1997, upon consideration of defendant David Rex Yeaman's Motion to Strike Language, and the government's response thereto, and Yea-

man's reply thereto, and the parties' supplemental memoranda thereto, it is hereby ORDERED that said Motion is DENIED.

AND IT IS SO ORDERED.