UNITED STATES of America,

v.

Osama EL–SILIMY, M.D., and The Aroostook E.N.T. Clinic, P.A., Defendants.

No. CRIM 04–63–B–W.

United States District Court, D. Maine.

March 4, 2005.

Jay P. McCloskey, McCloskey, Mina & Cunniff, LLC, Bangor, ME, Michael A. Cunniff, McCloskey, Mina & Cunniff, LLC, Thimi R. Mina, McCloskey, Mina & Cunniff, LLC, Portland, ME, for Defendants.

Donald E. Clark, Office of the U.S. Attorney, District of Maine, Portland, ME, James M. Moore, Office of the U.S. Attorney, District of Maine, Bangor, ME, for Plaintiff.

### MEMORANDUM DECISION ON DEFENDANTS' PRETRIAL MOTIONS

DAVID M. COHEN, United States Magistrate Judge.

The defendants have filed motions for a bill of particulars, to compel production of certain evidence, to extend the time for filing motions to suppress and to dismiss, to strike surplusage from the indictment and to exclude certain evidence. I deny the motions.

### I. Bill of Particulars

Invoking Fed.R.Crim.P. 7(f), the defendants seek an order directing the government to produce a bill of particulars with respect to Counts 63–87 and 97–118 of the indictment. Defendants' Motion for Bill of Particulars, etc. ("Bill Motion") (Docket No. 17) at 5–18. They present common arguments for each of the two groups of counts.

The function of a bill of particulars is to provide the defendant with necessary details of the charges against him to enable him to prepare his defense, to avoid surprise against [sic] trial, and to protect against double jeopardy.

*United States v. Abreu*, 952 F.2d 1458, 1469 (1st Cir.1992).

### A. Counts 63–87

The defendants contend that Counts 63–87 are not alleged with sufficient temporal specificity, suggesting that the indictment does not "even approximate[e] the dates of" the offenses charged under 18 U.S.C. § 1035 in these counts. *Id.* at 9. They also assert that they are unable to provide notice of an alibi defense to these counts, which the government has requested, because the indictment does not specify the date and time of each offense. *Id.* at 9–10.[1] Counts 63–87 are

---

1. The appropriate place to raise this argument would be in response to the government's request for notice under Fed.R.Crim.P. 12.1. That rule cannot reasonably be read to require an

alleged as a group in the indictment. Indictment (Docket No. 1) at 22–26. For each count, under the heading "Date of Offense," a range of dates is given, *i.e.*, 3/1/01 to 4/9/02 (count 63). *Id.* at 23. In response to the motion, the government states that the date of the offense given for each count includes the period between the creation of the allegedly false note in a given patient's record and the date when the note was produced in allegedly altered form to the government. Government's Memorandum of Law in Opposition to Defendants' Pretrial Motions ("Opposition") (Docket No. 25) at 27. It also asserts that copies of all versions of allegedly altered notes were produced to the defendants in discovery as well as a chart which highlighted the alleged alterations. *Id.* at 28. It states that no more specificity about the date of the offenses is possible. *Id.*

The defendants argue in reply that the date on which an allegedly altered note was produced to the government is irrelevant under 18 U.S.C. § 1035, the statute which they are alleged in Counts 63–87 to have violated, because the statute criminalizes only the making or use of false statements in connection with the delivery of or payment for health care benefits, items or services, and that production of the notes to the government in response to a subpoena "would not be a basis to sustain a conviction since such a use was clearly *not* in connection with the delivery or payment of a health care benefit."[2] Defendants' Consolidated Reply to Government's Memorandum of Law, etc. ("Reply") (Docket No. 28) at 4–5 (emphasis in original). This argument misses the point of the government's response. The government's position is that the use of the allegedly false notes in the medical records in connection with the delivery of or payment for health care services could only have occurred between the date on which each note was created and the date on which the corresponding record was produced to the government. The government's argument cannot reasonably be construed to contend that the statutory violation occurred when the notes at issue were produced to the government.

The defendants' position on the merits with respect to paragraphs 68–87 is that "the approximation of the date of the offense [is] absolutely essential to the defense" and, presumably, that the range of dates given in the indictment presents an insufficient approximation. Reply at 5. They also assert that the actual dates on which the allegedly false notes were used as contemplated by the statute "go to the very core of [the alleged] criminality." Bill Motion at 8. The Supreme Court opinion from which this phrase is taken does not support the defendants' position. In that case, the Court noted that "[w]hat the subject [of the questions which the defendant refused to answer] actually was . . . is central to every prosecution under the statute" at issue, which criminalized refusal to answer questions from members of Congress that were "pertinent to the question under inquiry." *Russell v. United States*, 369 U.S. 749, 752 n. 2, 764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). In this case, the *exact* date of the criminal conduct—making or use of a materially false statement in connection with the delivery of or payment for health care services, 18 U.S.C. § 1035—is no more central to any prosecution under that statute than is the date of the alleged conduct in any other criminal prosecution. Nor is that date any more "essential" to the defense than is the case in any other criminal prosecution. The First Circuit has held that an indictment that "provides a temporal framework" for the charge or charges at issue is sufficient, and suggested that "open-file" discovery may obviate the need for more specificity in this regard. *United States v. Sepulveda*, 15 F.3d 1161, 1192, 1193 (1st Cir.1993). Here, where

---

indictment to specify the time and place of an alleged offense.

2. Based on their interpretation of the government's response, the defendants assert that the counts at issue *"must* be dismissed." Reply at 6 (emphasis in original). The motion before the court is one for a bill of particulars. This assertion by the defendants does not constitute a motion to dismiss any portion of the indictment.

This court will not dismiss a portion of an indictment on the basis of an argument in a reply memorandum, to which the government has no ability to respond. If the defendants seek a dismissal of these paragraphs of the indictment on the basis of the argument which they now assert, they must seek leave to bring the appropriate motion.

the defendants have all of the documents upon which Counts 63–87 are based, it should be apparent to the defendants on what date or dates within the range included in the indictment the allegedly false statements were "used" as required by the statute. Nothing further is required.

### B. Counts 97–118

■ The defendants contend that Counts 97–118 fail to provide sufficient detail about the nature of the medical procedures alleged to have been unnecessary or not medically indicated or the identities of the patients for whom the defendants are alleged to have made false entries in medical records. Bill Motion at 11–18. They have submitted a "schedule" requesting further details in nine respects. Schedule A to Bill Motion, ¶¶ 2–10. The government contends that the indictment, grand jury exhibits and discovery already provided to the defendants provide sufficient detail under the *Abreu* test. Opposition at 28–31. The defendants argue in reply that they are entitled to know, for each surgery involved, whether the government alleges that it was unnecessary or excessive, because they will otherwise be unable to prepare expert testimony. Reply at 7. I am not persuaded by this argument. The two concepts are sufficiently similar to allow an expert to determine whether, in his or her opinion, the identified surgeries were necessary and not excessive, or both, without significant additional effort.[3] With respect to Counts 97–109, to which this portion of the defendants' argument applies, I conclude that the specific procedures are sufficiently identified in the indictment. Indictment ¶¶ 57–61.

■ The defendants also seek, with respect to Counts 97–118, "identification of the specific documents alleged to have been fraudulently submitted . . . and . . . for which of the thirteen different patients identified . . . the defendants are alleged to have made false and fraudulent entries and alterations to medical records." Bill Motion at 17. As to Counts 110–18, that information is provided by the indictment, which gives the names

of each patient and the code and description of each procedure as to which fraudulent claims are alleged to have been made. Indictment, ¶¶ 62–64. Counts 97–109 are presented somewhat less clearly with respect to the allegation of false and fraudulent entries because allegations that procedures were performed unnecessarily are also made, but the only reasonable conclusion from the wording of the indictment is that each of the specified procedures is alleged to have resulted in a false and fraudulent entry in the applicable medical record. Indictment ¶ 59. Since the dates of services and CPT codes are given in each case, *id.* ¶ 60, the defendants should be able to identify the documents involved. Again, nothing further is required.

## II. Motion to Compel

The defendants move for an order compelling the government to give notice pursuant to Fed.R.Crim.P. 12(b)(4) of the evidence it intends to use in its case-in-chief at trial. Defendants' Motion to Compel Disclosures of Government's Intent, etc. ("Motion to Compel") (Docket No. 18) at 1. They also seek an enlargement of time in which to file motions to suppress, to thirty days after the requested notice is served. *Id.* at 5. The government responds that it has already provided the notice required, in a letter dated November 8, 2004, in which it stated that it

> intends to offer some or all of the items made available to you in discovery as evidence in its case-in-chief at the trial of the defendants. The Government may receive additional documents that are discoverable pursuant to Rule 16(a)(1)(E), and will notify you in that event. We anticipate providing you with copies of most of the exhibits we may use in our case-in-chief *prior* to trial.

Opposition at 20 (emphasis in original). The defendants argue in reply that the use of the phrase "some or all" rather than "all" renders the response inadequate. Reply at 24–25.

---

3. I note that the government apparently considers the two descriptions to mean the same thing, since it refers to the surgeries only as "unnecessary" in its memorandum of law. Opposition at 28, 30.

■ The relevant procedural rule provides, in pertinent part:

> At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

Fed.R.Crim.P. 12(b)(4)(B). The First Circuit, quoting with approval the advisory committee's note to Fed.R.Crim.P. 12, has noted that this portion of Rule 12 (then found at Rule 12(d)(2)) "provides a mechanism for insuring that a defendant knows of the government's intention to use evidence to which the defendant may want to object." *United States v. Cruz–Paulino*, 61 F.3d 986, 993–94 (1st Cir.1995). This portion of the rule is intended to avoid the necessity of moving to suppress evidence which the government does not intend to use. *Id.* at 994. It is not intended to allow a defendant to force the government to decide precisely which documents provided in discovery it will offer at trial and to prevent it from using any that it does not so designate as a matter of trial tactics. It is not intended as a strategic tool for defendants and was "not designed to aid the defendant in ascertaining the government's trial strategy." *Id.*

From all that appears in the defendants' papers, they bring this motion only for a strategic purpose. Their insistence that the use of the words "some or all" as opposed to merely "all" makes the government's response inadequate is without support in the authority they cite and unreasonably expands the scope of that authority. In *United States v. Brock*, 863 F.Supp. 851 (E.D.Wis.1994), the court held that an "open file" discovery policy was not the equivalent of notice under Rule 12(b)(4), but also noted that a statement that the government intended to use all of the

discoverable material as evidence was sufficient, even though "[o]bviously, the government might not end up using all of the discoverable information in its files." *Id.* at 868 & n. 33.[4] The other case law cited by the defendants involved situations in which the government attempted to use at trial evidence of which it had not provided notice to the defendant. *United States v. Poole*, 794 F.2d 462, 464 n. 1 (9th Cir.1986), or where the government chose to rely solely on its "open door" discovery policy in response to a motion under Rule 12(b)(4), *United States v. Kelley*, 120 F.R.D. 103, 107 (E.D.Wis.1988) (defendant sought notice of evidence that the government "intend[ed]" or "consider[ed]" using at trial). None of this authority may be stretched to support the defendants' position in this case. The motion is denied.

Because the motion is denied, the defendants' further request for an enlargement of time to thirty days from the date of delivery of another notice under Rule 12(b)(4) to supplement any motions already filed or to file additional motions, Motion to Compel at 5, is moot.

### III. Motion for Enlargement of Time

■ The defendants seek leave to file "in advance of trial but following the government disclosure" pursuant to 18 U.S.C. § 3500 (the "Jencks Act") a motion to dismiss specific counts of the indictment. Defendants' Motion for Enlargement of Time in Which to File Motion to Dismiss and For Other Relief, etc. ("Enlargement Motion") (Docket No. 19) at 1. This motion is dependent upon the government's release of Jencks Act material to the defendants before it is required to do so. As counsel for the defendants acknowledge, this court "probably cannot *order* the United States to disclose so-called Jencks Act statements" earlier than it is required to so under the Act. *Id.* at 4. The Act merely requires that the government produce any statement of a witness which relates to the

---

**4.** This observation makes it unnecessary to address the defendants' assertion that "[o]bviously, the Government did not state an intention to use 'all' of the evidence since it could not possibly utilize 80,000 documents [sic] at trial." Reply at 25. It is 78,000 pages of information that is at issue, not 80,000 separate documents. The defendants cite no authority holding that the gov-

ernment must use at trial every document or other piece of evidence that it has designated under Rule 12(b)(4). Such a requirement would in effect require the government to disclose its trial strategy before trial, which all courts addressing the issue have said it may not be required to do.

subject matter as to which the witness has testified *after* the witness has testified on direct examination. 18 U.S.C. § 3500(b). The practical effect of the defendants' request for 30 days after their receipt of Jencks Act material to file a motion to dismiss the indictment, Enlargement Motion at 5, would be to circumvent the language of the act and quite possibly to delay the start of trial. The government has represented that it "will provide most of the Jencks Act material that has not to date been disclosed several weeks prior to the commencement of trial testimony." Opposition at 19. Should the defendants discover for the first time in such material the basis for a motion to dismiss all or some portion of the indictment, they are not foreclosed from requesting leave to file such a motion at that time. This court retains the power to deal with any and all of the parade of horribles suggested by the defendants as likely to occur if they do not receive the extraordinary scheduling indulgence which they seek. The defendants have offered no persuasive reason for this court to go beyond the strictures of the Jencks Act. The motion for an enlargement of time to file motions associated with the disclosure of Jencks Act material is denied, as is the request that the court order the government to "specify the date in advance of trial that it will in fact produce Jencks Act materials." Enlargement Motion at 5.

## IV. Motion to Strike

■ The defendants move to strike the following from the indictment as surplusage: Paragraphs 6, 14(a)-(d), 21, 22 and 27. They also request that the court exclude from trial "evidence of the same." Defendants' Motion to Strike Prejudicial Surplusage from the Indictment, etc. ("Motion to Strike") (Docket No. 21) at 1–2. Fed.R.Crim.P. 7(d) provides: "Upon the defendant's motion, the court may strike surplusage from the indictment or information." The purpose of this section of Rule 7 is to protect the defendant against immaterial or irrelevant allegations in an indictment which may be prejudicial. *United States v. Fahey,* 769 F.2d 829, 841–42 (1st Cir.1985) (quoting advisory committee note). Only rarely has surplusage been

stricken. 1 C. Wright, *Federal Practice and Procedure* (3d ed.1999) § 127 at 639.

It is sometimes proper to reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the challenged language, *see United States v. Awan,* 966 F.2d 1415, 1426 (11th Cir.1992), but in this case the government's representations concerning the evidence it intends to present make that unnecessary. Of course, if the evidence actually presented by the government at trial does not establish the relevance of any of the challenged language in the indictment, the defendants may renew their motion to strike such language at the appropriate time.

### A. Paragraphs 6 and 14(d)

■ Paragraph 6 of the indictment recites the defendant clinic's gross charges in 2000 and 2001, the amount paid to defendant El-Silimy in each of these years and the rank of each in otolaryngology practices in the United States for these years, according to data published by the Medical Group Management Association. Indictment ¶ 6. Paragraph 14(d) of the indictment recites the defendants' gross charges and receipts between June 1, 1999 and December 31, 2001 and the percentage of each that was generated by nasal and sinus surgery and procedures related to such surgery. *Id.* ¶ 14(d). The defendants contend that these paragraphs are surplusage, intended to prejudice the jury because the defendants made a lot of money. Motion to Strike at 3–6. The government responds that it will offer this evidence as proof of the existence of a scheme to defraud, intent to defraud and the defendants' involvement in the scheme. Opposition at 11–13. It contends that the evidence will not be offered to show that the defendants made a lot of money but rather, when placed in the context of the charges and receipts of other similar practices, to show intent, because the surgeries at issue generated larger charges and receipts than other forms of treatment. *Id.* at 12–13. The defendants reply that these paragraphs should be stricken because the indictment does not allege that their practice "was permeated with fraudulent and unnecessary sinus surgeries" and because specific allegations are made in the indict-

ment about the surgeries of only 13 patients, representing less than 1.5% of their total surgeries during the relevant period. Reply at 15–16. This argument essentially addresses the weight of the evidence rather than the question whether the presence of the challenged paragraphs in the indictment will unduly prejudice the defendants.

█ Language in the indictment which is information the government, in good faith, intends to properly prove at trial cannot be stricken as surplusage, no matter how prejudicial it may be. *United States v. Hill,* 799 F.Supp. 86, 88–89 (D.Kan.1992); *United States v. Ianniello,* 621 F.Supp. 1455, 1479 (S.D.N.Y.1985); *United States v. Lavin,* 504 F.Supp. 1356, 1362 (N.D.Ill.1981). The government has made such a showing here. Income evidence is relevant in this case to demonstrate that financial gain was the motive for the crimes charged. *See United States v. Logan,* 250 F.3d 350, 369 (6th Cir. 2001). The motion to strike these paragraphs as surplusage and to exclude from trial evidence to support the allegations in these paragraphs is denied.

## B. Paragraphs 14(a)-(c)

█ The defendants contend that the statistics recited in paragraphs 14(a)-(c) of the indictment "apply primarily to 441 surgeries which are not alleged to have been medically unnecessary are immaterial and irrelevant to the 13 surgeries which are the subject matter of the indictment." Motion to Strike at 5. This argument fails on its face. The defendants do not and cannot contend that the statistics at issue do not also apply to the specific surgeries identified in the indictment. The information included in these paragraphs is clearly relevant to the question whether the 13 surgeries were medically necessary, a fact only emphasized by defendant El–Silimy's alleged statement to investigators that he always followed the clinical indicators which will presumably be one of the subjects of expert testimony. Opposition at 15–16. The defendants' assertion that "any extrapolation from the statistics to the universe of the defendants' surgical procedures would be unfairly prejudicial on its face," Reply at 20, does not serve as a reason to

strike the challenged language from the indictment or to exclude the related evidence. If the government does make such an attempt at trial, the defendants may raise such an argument at that time. Again, the weight of such evidence is a matter for exploration at trial, not in connection with a motion to strike surplusage from an indictment. The motion is denied as to these paragraphs of the indictment.

## C. Paragraphs 21 and 27

█ Paragraph 21 of the indictment alleges that a check drawn on the defendant clinic's bank account and payable to defendant El–Silimy for $434,102.50 was deposited that same day into another account opened that day in the name of El–Silimy's wife "in trust for" El–Silimy. Indictment ¶ 21. Paragraph 27 alleges that two months later El–Silimy's wife wired $428,700 from this account to the United Kingdom. *Id.* ¶ 27. The defendants assert that "[t]he government does not even attempt to explain how Dr. El–Silimy's banking activity is relevant or material to the subject matter of the indictment" and that the paragraphs are unduly prejudicial because they are intended to suggest that El–Silimy "earned a lot of money" and that "there is something criminal or at least suspicious about moving that amount of money from one account to another." Motion to Strike at 6, 7. The government responds that the transactions were made "shortly after significant investigative actions in this case," Opposition at 13, which are set forth in the indictment, Indictment ¶¶ 15–20, 22, 24–26.

As the government contends, Opposition at 14, these allegations provide circumstantial evidence of intent by concealment of assets and of consciousness of guilt, as well as of motive (pecuniary gain). *See generally United States v. Cisneros,* 26 F.Supp.2d 24, 54–55 (D.D.C.1998) (Rule 7(d) to be strictly construed against striking surplusage); *United States v. Yeaman,* 987 F.Supp. 373, 376–77 (E.D.Pa.1997) (language properly included in indictment if pertains to matters which government will prove at trial). The defendants argue in response that "[t]here is no evidence that the defendants even knew about the

Government's investigative activities" on the date of the first transaction. Reply at 21. They understandably cite no authority to support their implied assertion that such allegations must be made in the indictment in order to make paragraph 21 relevant or material to the crimes charged. This argument may well be appropriate at trial when the government attempts to introduce evidence of the transactions, but it does not serve the analysis of the motion currently before the court. If the government does not "establish an adequate evidentiary foundation before it is allowed to seek admission of the evidence of [the first of] these financial transactions," *id.*, at trial, this argument will be appropriate. It is not appropriate at this stage of the proceedings. The motion to strike these paragraphs and to exclude related evidence from trial is denied.

### D. Paragraph 22

Paragraph 22 of the indictment provides: "In about March 2002, the USAO paid claims data from Tri–Care. At that time, the Defense Criminal Investigative Service ('DCIS') of the Department of Defense, a department of the United States, joined the investigation." The defendants contend that "there is no relevance to this allegation and it could leave the prejudicial impression that the fraudulent activities were so extensive that the government had to call out the 'military' and/or that Dr. El–Silimy was bilking the military in a time of war." Motion to Strike at 6–7. They also assert that "there are no charging counts in the indictment which involve so-called Tri–Care." *Id.* at 7. The government responds that there are eight counts in the indictment "in which the victims include patients who were insured by the Tri–Care Program." Opposition at 16. It also states that the health care benefit program involved in Counts 2, 12, 19, 26, 27, 64, 73 and 80 is the Tri–Care Program and that DCIS is the federal agency with investigative responsibilities for that program. *Id* at 16–17. The defendants do not reply to this clarification.

The information provided in the government's response is not discernible from the indictment itself, but its response does make clear that information about the Tri–Care Program and the DCIS investigation will be offered at trial. The government has shown that the allegations in paragraph 22 are relevant to the particular crimes charged. Presentation of the evidence as described by the government will not allow the indictment to leave the prejudicial impression suggested by the defendants or, if the impression is left that the defendants were "bilking" the military, that impression will likely not be so unfairly prejudicial that the prejudice would outweigh the evidentiary value of the information. The defendants are not entitled to the relief sought with respect to paragraph 22 of the indictment on the showing made.

### V. Conclusion

For the foregoing reasons, the defendants' motions for a bill of particulars (Docket No. 17), to compel and for enlargement of time (Docket No. 18), for enlargement of time (Docket No. 19) and to strike surplusage and exclude evidence from trial (Docket No. 21) are **DENIED**.