882 F.2d 67
 DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
v.
Frank I. GARDNER, Jr., Respondent,
and
Elgin National Industries, Employer/Respondent.
 No. 89-3052.
 United States Court of Appeals,
Third Circuit.
 Argued June 15, 1989.
Decided Aug. 14, 1989.
 
 Jerry G. Thorn, Acting Solicitor of Labor, Donald S. Shire, Associate Solicitor for Black Lung Benefits, Sylvia T. Kaser, Counsel for Appellate Litigation.
 Richard Zorn (argued), U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for employer/respondent.
 William H. Howe, Daniel E. Durden (argued), Loomis, Owen, Fellman & Howe, Washington, D.C., for petitioner.
 Before SLOVITER and COWEN, Circuit Judges, and ROTH, District Judge.*
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 
 1
 This appeal presents the discrete legal issue of whether a Department of Labor regulation which assesses employer liability for Black Lung Benefits on a "responsible operator" which employed the miner for "not less than 1 year" can be construed to encompass employment of a Black Lung claimant for a period covering less than 365 days. The dispute in this case is between the employer which contends that it is not a responsible operator, and therefore not liable, because the employee was employed by it for only 357 days, and the Director of Office of Workers' Compensation Programs (Director) who contends that the employer is liable because the employee was employed for 12 months.
 
 
 2
 The case is before us on appeal by the Director from a grant of summary judgment in favor of the employer by the Benefits Review Board, United States Department of Labor (BRB). We have jurisdiction pursuant to section 21(c) of the Longshore and Harbor Workers' Compensation Act as amended, 33 U.S.C. Sec. 921(c) (1982), as incorporated by section 422(a) of the Black Lung Benefits Act, 30 U.S.C. Sec. 932(a) (Supp. V 1987). Our review of the BRB's interpretation of the applicable regulations is plenary.
 
 II.
 
 3
 This case is factually and procedurally simple. Claimant Frank I. Gardner, Jr., worked at various coal mining jobs during the 1950's and 1960's. Between October 9, 1969 and September 30, 1970 Gardner was employed by Toner Construction Company, a division of Elgin National Industries, Inc. (Elgin), a business engaged in coal mine construction.[1] During that period Gardner worked for 234 days.
 
 
 4
 Subsequent to being laid off by Elgin, Gardner applied for Black Lung Benefits and the Department of Labor found that he was eligible for such benefits. Gardner has since died and his widow has been deemed entitled to derivative benefits. This appeal, therefore, does not concern whether there will be payment of Black Lung benefits but only who will be responsible for payment of those benefits.
 
 
 5
 The Department of Labor concluded that Elgin was the responsible operator liable for payment of such benefits. Although Gardner had other coal mine employment before he worked for Elgin, that employment occurred before 1970 and under the applicable regulations pre-1970 employers cannot be "responsible operators." See 20 C.F.R. Sec. 725.492(a)(3).
 
 
 6
 Elgin requested a formal hearing by an ALJ, who, in reliance on BRB precedent,[2] granted summary judgment for Elgin on the ground that Gardner had not been employed by Elgin for a full calendar year, and remanded the case for payment of benefits by the Black Lung Disability Trust Fund. On appeal by the Director to the BRB, the BRB affirmed the ALJ's order. The Director has appealed to this court. As far as we or the parties have been able to ascertain, this is an issue of first impression in the federal courts.
 
 III.
 
 7
 The Black Lung Benefits Reform Act of 1977 provided that the employer responsible for the operation of the facility where the miner was employed will normally be responsible for paying benefits. See 30 U.S.C. Sec. 932(a)-(b) (1982 & Supp. V 1987). Benefits not paid by such a "responsible operator" are paid from the Black Lung Disability Trust Fund, a Fund established by that Act to be financed by the coal industry. See 26 U.S.C. Secs. 4121, 9501 (1982 & Supp. V 1987).
 
 
 8
 Under the statute, it is the Secretary's obligation to promulgate regulations which establish standards for identification of the responsible operator. 30 U.S.C. Sec. 932(a). The regulations promulgated by the Secretary provide that the responsible operator shall be "the operator or other employer with which the miner had the most recent periods of cumulative employment of not less than 1 year, as determined in accordance with paragraph (b) of this section." 20 C.F.R. Sec. 725.493(a)(1) (emphasis added). Paragraph (b) provides that:
 
 
 9
 For purposes of this section, a year of employment means a period of 1 year, or partial periods totalling 1 year, during which the miner was regularly employed in or around a coal mine by the operator or other employer. Regular employment may be established on the basis of any evidence presented, including the testimony of a claimant or other witnesses, and shall not be contingent upon a finding of a specific number of days employment within a given period. However, if an operator or other employer proves that the miner was not employed by it for a period of at least 125 working days, such operator or other employer shall be determined to have established that the miner was not regularly employed for a cumulative year by such operator or employer for the purposes of paragraph (a) of this section.
 
 
 10
 20 C.F.R. Sec. 725.493(b).
 
 
 11
 It is evident that the regulation contains two separate requirements as to time of employment. One is that the miner must have been employed by the operator for "not less than 1 year." Id. The other is that during that employment period the miner must have been "employed ... for ... at least 125 working days" or the miner will not be deemed to have been "regularly employed by such operator or employer." Id. As a practical matter, the one-year employment requirement sets a floor for the operator's connection with the miner, below which the operator cannot be held responsible for the payment of benefits. The 125-day limit relates to the minimum amount of time the miner may have been exposed to coal dust while in employment by that operator.
 
 
 12
 On this appeal, since it is conceded that Gardner had 234 working days during his employment by Elgin, the "regularly employed" component of the "responsible operator" test is satisfied. The only disputed issue is whether Gardner's employment by Elgin from October 9, 1969 to September 30, 1970, a period less than 365 days, constitutes a period of "cumulative employment of not less than 1 year" as required by 20 C.F.R. Sec. 725.493(b).
 
 
 13
 Although Congress could have chosen to statutorily define the term "1 year," as the Secretary noted in comments in response to public comment on 20 C.F.R. Sec. 725.493, neither the Act nor its legislative history define "one year." 43 Fed.Reg. 36,772, 36,805 (1978). Significantly, neither does the regulation, and the Director does not contend otherwise. Instead, the Director points to internal guidelines issued in 1980 which define a cumulative year of employment for purposes of designating an employer as the responsible operator as follows:
 
 
 14
 A 12 month period of employment or cumulative periods of employment totalling 12 months during which the miner was regularly employed by the operator constitutes a year of employment, for the purpose of identifying a [responsible operator].
 
 
 15
 Coal Mine (Black Lung Benefits Act) Procedure Manual, Chapter 2-800, Part 2-Claims, 3 (Feb.1980). The Director's position was further expanded in a subsequent departmental communication:
 
 
 16
 To establish a year of employment with an employer the available evidence should show employment during twelve calendar months. This period need not be continuous nor must the period of employment necessarily cover the full month. Any cumulative period of regular employment, showing at least some employment with the subject employer in twelve calendar months is sufficient to meet the requirement for a cumulative year of employment.
 
 
 17
 Black Lung Benefits Act Circular No. 80-19 (Sept. 18, 1980) (emphasis in original). The Director then argues that Gardner was employed by Elgin in twelve calendar months and, therefore, as construed by the Director, this constitutes the requisite one year of employment.
 
 
 18
 We consider first the Director's contention that we should give deference to his interpretation of the regulation. There is no gainsaying the well-established premise that an agency's consistent interpretation of its own regulations is entitled to deference unless it is "plainly erroneous or inconsistent with the regulation." Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); Director, Office of Workers' Compensation Programs v. Mangifest, 826 F.2d 1318, 1323 (3d Cir.1987). Nor is there any question that this deference is owed to the Director, as policymaker, rather than to the BRB which exercises a purely adjudicatory function. See Potomac Elec. Power Co. v. Director, Office of Workers' Compensation Programs, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980) (BRB entitled to no deference); Bethlehem Mines Corp. v. Director, Office of Workers' Compensation Programs, 766 F.2d 128, 130 (3d Cir.1985) (Director's interpretation of Secretary's prejudgment interest regulations prevails over BRB interpretation).
 
 
 19
 Our deference to an agency's consistent interpretation of its regulations, however, is tempered by our duty to independently insure that the agency's interpretation comports with the language it has adopted. See Diamond Roofing Co. v. Occupational Safety and Health Review Comm'n, 528 F.2d 645, 649 (5th Cir.1976) (term open-sided floor could not be read to apply to roof).
 
 
 20
 The difficulty with the Director's position that we must give deference to his "twelve-months" policy is that the only documents which clearly define "1 year" in the manner urged here are not regulations but internal documents. As such, they have not been subject to the notice and comment procedures applicable to duly promulgated regulations. 5 U.S.C. Sec. 553 (1982). Thus, the employers in the coal industry have not been given the appropriate opportunity to be heard about the promulgation of a twelve-months definition, and they have not been put on notice so that they can conduct their affairs in reliance thereon. As we noted in Mangifest, "[a] claimant proceeding in good faith should not be subjected to a trap brought about by an interpretation of a regulation hidden in the bosom of the agency." 826 F.2d at 1325.
 
 
 21
 As we have stated in rejecting an agency's interpretation of its own regulation, "[t]he test is not what [the Secretary] might possibly have intended, but what he said." Bethlehem Steel Corp. v. Occupational Safety and Health Review Comm'n, 573 F.2d 157, 161 (3d Cir.1978) (standards applying to cranes under "normal operating conditions" did not apply during times when maintenance was being performed on crane). "Having written the regulations, the Director is responsible for their text. If the meaning is not clear on a reasonably objective basis, then the regulations should be changed so that no ambiguity remains." Mangifest, 826 F.2d at 1334 (Weis, J., concurring).
 
 
 22
 Elgin argues that in the absence of any statutory or regulatory definition, the words "1 year" should be given their ordinary meaning. We note that the first definition given for a "year" in Webster's Third New International Dictionary is "[t]he period of about 365 1/4 solar days required for one revolution of the earth around the sun ...," thus supporting the ordinary meaning approach urged by Elgin. Webster's Third New International Dictionary 2648 (1961). The Director in turn refers us to the definition of "year" in Black's Law Dictionary which states, "[w]hen the period of a 'year' is named, a calendar year is generally intended, but the subject-matter or context of statute or contract in which the term is found or to which it relates may alter its meaning." Black's Law Dictionary 1448 (5th ed.1979). Since nothing in the statute or regulations alters the ordinary meaning, we agree with Elgin that this definition, reaffirming that "a calendar year is generally intended," supports its contention that the term "1 year" means 365 days.
 
 
 23
 The Director notes that for the purposes of applying statutory presumptions under 30 U.S.C. Sec. 921(c) courts have upheld a variety of methods of computing years of employment which are not based on periods of 365 days, and thus argues that it is permissible to adopt a definition of year as something other than 365 days for purposes of determining responsible operators. It is one thing, however, for courts to allow liberal construction of the term "year" of employment in order to effectuate the congressional purpose that the Black Lung laws be construed in favor of finding entitlement to benefits, and another thing to allow such flexibility where it is allocation between payers rather than the claimant's entitlement that is at issue.
 
 
 24
 The Director attempts to justify his interpretation on the ground that maximization of industry responsibility for Black Lung benefits was a congressional purpose behind the Black Lung Benefits Reform Act. Agreement with this argument, however, does not ineluctably lead to the Director's proffered interpretation because the Trust Fund is in fact financed by a tax on the industry. See 26 U.S.C. Secs. 4121, 9501.
 
 
 25
 In conclusion, while we do not suggest that the Secretary would be precluded by the relevant statutory language from promulgating a regulation defining year in the manner the Director has chosen to define it in the internal guidelines and policy communication,[3] it is manifest that the Secretary has not done so. Even read in conjunction with the Secretary's comments at 43 Fed.Reg. 36,772, 36,805 (1978), there is nothing in 20 C.F.R. Sec. 725.493 to suggest that "1 year" means employment in twelve calendar months rather than employment for a period spanning 365 days. We thus conclude that the Director's interpretation is plainly inconsistent with the regulation as now constituted.
 
 IV.
 
 26
 For the foregoing reasons, we will deny the petition for review of the decision of the Benefits Review Board.
 
 
 
 *
 Hon. Jane R. Roth, United States District Court for the District of Delaware, sitting by designation
 
 
 [1]
 An operator is defined to include " 'any owner, lessee or other person who operates, controls, or supervises a coal mine' ... [and] certain other employers, including those engaged in coal mine construction...." 20 C.F.R. Sec. 725.491(a) (1988). As a company involved in coal mine construction Elgin is potentially liable as an operator. See 20 C.F.R. Sec. 725.491(a). The regulations provide in part that a responsible operator "shall have been an operator of a coal mine or other facility for any period after June 30, 1973; ... [t]he miner's employment with the operator or other employer shall have included at least 1 working day ... after December 31, 1969." 20 C.F.R. Sec. 725.492(a)(2)-(3)
 
 
 [2]
 The BRB has consistently held that the term one year as used in 20 C.F.R. Sec. 725.493 means one full calendar year, and has rejected the "twelve months" definition proffered here. See Bungo v. Bethlehem Mines Corp., 8 Black Lung Rep. (MB) 1-348, 349 (Ben.Rev.Bd. Oct. 31, 1985); Sisko v. Helen Mining Co., 8 Black Lung Rep. (MB) 1-272, 273 (Ben.Rev.Bd. Sept. 20, 1985); Gration v. Westmoreland Coal Co., 7 Black Lung Rep. (MB) 1-90, 92 (Ben.Rev.Bd. June 15, 1984)
 
 
 [3]
 Elgin, at least, contends merely that such an interpretation has not been embodied in a regulation clearly so defining the term for purposes of designating responsible operators