Darrell **DAVIS d/b/a Davis Enterprises,**
**and Midwest Coal Corporation,**
**Plaintiffs–Appellants,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 91–1840.

United States Court of Appeals,
Seventh Circuit.

Argued April 6, 1992.

Decided Aug. 25, 1992.

David T. Lumerman, St. Louis, Mo. (argued), for plaintiffs-appellants.

Robert L. Simpkins, Asst. U.S. Atty., Crim. Div., Fairview Heights, Ill., Gary R. Allen, Charles Bricken, Edward T. Perelmuter (argued), Gayle P. Miller, Mark Winer, Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., for defendant-appellee.

Before POSNER and KANNE, Circuit
Judges, and BURNS, Senior District
Judge.*

POSNER, Circuit Judge.

The Black Lung Benefits Act, 30 U.S.C. §§ 901 *et seq.*, first passed in 1969, provides benefits to coal-mine workers disabled by lung diseases caused by exposure to coal dust. For the most part the benefits are paid by the coal companies themselves rather than by the government, but the government pays some of the benefits and also incurs expenses of administering the program. 30 U.S.C. §§ 921–925, 934(b)(1), 939; *Cook v. Director*, 816 F.2d 1182, 1184 (7th Cir.1987); *Director v. Gardner*, 882 F.2d 67, 69 (3d Cir.1989). To defray the public costs Congress in 1978, by the Black Lung Benefits Revenue Act, amended the Internal Revenue Code to impose an excise tax on the production and sale of coal. 26 U.S.C. § 4121(a). The tax has varied over the years and is higher for underground than for surface mines, presumably because the exposure to coal dust is greater in the former. Hearing before the Subcomm. on Taxation and Debt Management Generally of the S. Comm. on Finance on the Tax Aspects of the Black Lung Benefits Reform Act of 1977, 95th Cong., 1st Sess. 49 (1977), U.S.Code Cong. & Admin.News 1978, p. 237.

Between 1914 and 1952, which is to say long before either the Black Lung Benefits Act or the Black Lung Benefits Revenue Act was passed, Peabody Coal Company had operated a coal mine called the Harco Culm Mine in southern Illinois. The record does not say whether it was a surface or an underground mine, but in any event its operation resulted in the creation of piles of coal refuse. Peabody abandoned the mine and the piles, presumably in 1952 although again the record is unclear. In 1979, the appellants, Darrell Davis and his companies (Davis for short), began to operate a coal reprocessing plant designed to

* Hon. James M. Burns of the District of Oregon, sitting by designation.

obtain usable coal from the refuse piles at the Harco mine. This operation continued until 1989. The refuse was placed in a hopper that was moved by a conveyer belt through a crusher in which the refuse was mixed with water. Afterward the coal was separated out, dried, stored, and eventually shipped to power plants for use as fuel. The Internal Revenue Service imposed an excise tax on the reclaimed or reprocessed coal sold by Davis. He paid a part of the tax and brought this suit for refund, claiming that the tax is not applicable to him because he did not produce the coal: Peabody produced it. He lost, and appeals.

The statute places the tax on "coal from mines located in the United States sold by the producer." It does not define "producer" but in a regulation promulgated shortly after the statute was passed the Treasury defined "producer" as "includ[ing] any person who extracts coal from coal waste refuse piles." Treas.Reg. § 48.4121–1(a)(1); see also Rev.R. 87–21, 1987–1 Cum.Bull. 310. This is an exact description of Davis, but he contends that the regulation is contrary to the statute. We have been told to give substantial weight to the Treasury's interpretation of the tax laws, *Cottage Savings Association v. Commissioner*, —— U.S. ——, ——, 111 S.Ct. 1503, 1508, 113 L.Ed.2d 589 (1991); *Bob Jones University v. United States*, 461 U.S. 574, 596–97, 103 S.Ct. 2017, 2030–31, 76 L.Ed.2d 157 (1983); *National Muffler Dealers Association, Inc. v. United States*, 440 U.S. 472, 476–77, 99 S.Ct. 1304, 1306–07, 59 L.Ed.2d 519 (1979), and we cannot say that its interpretation of this statute is unreasonable. As is obvious from the title of the Black Lung Benefits Revenue Act, the purpose of the tax is to fund the Black Lung Benefits Act, or rather that portion of the expense of the latter Act that is borne by the federal government. An employee of Davis who contracted lung disease as a result of exposure to the coal dust generated by the reprocessing of the coal from the refuse piles would, all concede, be entitled to benefits under the Act. No doubt, as Davis argues without contradiction from the government, the exposure of his workers to coal dust is much less than if they were working in an underground mine, not only because the refuse piles are in the open air but also because they are wetted down in the reprocessing operation itself. But the tax statute adjusts for this factor, in a crude fashion anyway, by fixing the tax rate for surface mines at half the rate for underground mines, and the regulation classifies production from coal refuse piles with production from surface mines. The classification is broadly though not exactly consistent with the statute, which says that "coal shall be treated as produced from a surface mine if all of the geological matter above the coal being mined is removed before the coal is extracted from the earth." 26 U.S.C. § 4121(d). That is an approximate description of Davis's operation, the difference being that the coal was taken out of the ground, rather than the ground being taken out from over the coal, before the process of extraction began.

It is important to note that the coal had never been taxed and that Davis did more than just cart away coal left abandoned outside of a mine. If the coal had been taxed when produced the case would be like *Kanawha Dredging Co. v. United States*, 88–1 U.S.T.C. ¶ 16,463 (S.D.W.Va. 1987), where coal that had spilled from barges was recovered from the river bottom. The coal had been taxed once, when produced before being shipped by barge. Although the court also emphasized that the dredging operation involved only minimum exposure of the workers to coal dust, the main point as we see it was that imposing the excise tax on the dredger would result in double taxation because the dredging created no new dangers of disease beyond those created when the coal was produced originally. Likewise if Davis had merely trucked the coal from the refuse piles to the power plants, this would not be "production," in the practical sense that it would not expose the workers to appreciable coal dust. *Spurlin v. Director*, 956 F.2d 163 (7th Cir.1992). But because the refuse was not usable as coal without further processing (which is no doubt why Peabody abandoned it when it abandoned the mine), Davis was forced to reprocess it—a process fairly described as the "extraction" of coal from the piles,

much as if the piles were coal seams or other ore.

Davis argues that the statutory language divides production into surface and underground mining and that extraction of coal from refuse piles is neither. It is true that the provision we quoted earlier defining surface mining does not quite fit what Davis did; but the provision on underground mining does not fit it at all. And the purpose of these provisions was not to define "producer"; it was to indicate which coal would be taxed more heavily.

Davis points to the statutory exemption for lignite. 26 U.S.C. § 4121(c). The government is at least embarrassed by the exemption, because it acknowledges that it creates "a small dichotomy." Why lignite was exempted is unclear. Maybe it is because lignite dust is less likely to produce lung disease. S.Rep. No. 336, 95th Cong., 1st Sess. 6 (1977), U.S.Code Cong. & Admin.News 1978, p. 237. Maybe, as Davis conjectures, it is because lignite is a low-value coal, and its producers would have difficulty paying the tax. Hearing, *supra*, at 43, 63; Staff of Jt.Comm. on Taxation and Comm. on Finance, Tax Aspects of Black Lung Legislation (S. 1538) 14 (Comm. Print June 21, 1977). Davis points out that reclaimed coal is of low value too—he says it sells for only half the price of newly mined coal. He argues that the exclusion of lignite shows that "producer" in the Black Lung Benefits Revenue Act is not coextensive with the same word in the Black Lung Benefits Act itself, since lignite producers are subject to the latter Act. *Consolidated Coal Co. v. McGrath*, 866 F.2d 1004, 1005 (8th Cir.1989). So the fact that he is subject to it too, and that his workers might therefore file claims under it, should not be decisive on whether he is subject to the tax statute. He laments that at the time the statute was passed, unlike the case of lignite production "there were no advocates pointing out that this type operation could not economically bear the tax burden." The last point overlooks the fact that although the statute imposes a flat rather than an *ad valorem* tax, it also caps the tax at 4.4 percent of the value of the coal sold, 26 U.S.C. § 4121(b)(3), which should go some way toward protecting the lower-value producers from a crushing tax liability.

But all this is an aside. The fact that one group of producers wrested an exemption from the Act does not exempt others similarly situated; Davis makes no contention that it is a denial of equal protection of the laws to tax coal reprocessors more heavily than lignite producers. We do not accept the government's argument that by exempting those producers Congress showed that it was aware of *every* method of producing coal, including by reclamation from refuse piles. There is no indication that anyone in Congress knew about it. Not only is the squeaky wheel more likely to be oiled; the quiet wheel is unlikely to be heard at all. We assume that Congress had no view on whether coal reprocessors should be taxed. But by leaving the word "producer" undefined and by indicating clearly enough in the title of the statute that the purpose was to fund the black lung benefits program, Congress made room for the Treasury to sweep within the statute's scope all plausible "producers" whose activities might give rise to black lung benefits claims, save only the lignite producers, whom Congress had exempted. The regulation is valid, and the decision of the district court must therefore be

AFFIRMED.