**UNITED STATES of America**

v.

**Markell BOWYER, Heichor J. Kpodi, Defendants.**

**No. CRIM.A. 97–00322(SS).**

United States District Court, District of Columbia.

Nov. 19, 1997.

**154**

L. Barrett Boss, Teresa Alva, Federal Public Defender for D.C., Washington, DC, for Markell Bowyer.

Frederick D. Jones, III, Washington, DC, for Heichor J. Kpodi.

Stephen A. Best, U.S. Attorney's Office, Washington, DC, Leutrell Michael Carlton Osborne, II, U.S. Attorney's Office, Narcotics Division, Washington, DC, for U.S.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on Defendant Bowyer's motions: (1) to compel election between multiplicitous firearm and ammunition counts; (2) to suppress tangible evidence, and (3) to prevent government from offering evidence of Defendant's prior felony conviction. Defendant Kpodi has moved to adopt and conform Defendant Bowyer's motions as they relate to him.

## I. FACTUAL BACKGROUND

On July 17, 1997 at about 12:40 a.m., Officer Brett Parson of the Metropolitan Police Department was on patrol in his police car responding to a tip regarding rampant drug activity on the 4200 block of Second Street, N.W. While on patrol and in uniform, Officer Parson observed a person on a bicycle talking to the driver of a brown car stopped in the 4200 block of Second Street, N.W. Based on numerous previous encounters, Officer Parson recognized the person on the bicycle as Defendant Markell Bowyer. Mr. Bowyer got off the bike and entered an apartment building at 4211 Second Street, N.W. Officer Parson drove past the building to make it appear as though he were leaving the area and parked his car out of view. Officer Parson then exited the car to seek a better position to observe. Mr. Bowyer walked out of the building and walked into the mouth of a nearby alley. In the alley, Defendant Bowyer handed an object to Defendant Kpodi. As soon as Mr. Kpodi received the object from Mr. Bowyer, Mr. Kpodi turned around, squatted down, and placed the object into weeds growing around steps to the building. Officer Parson then went back to his car and pulled up near the Defendants. When Officer Parson exited his car, Mr. Kpodi began to approach him and Mr. Bowyer turned around and began to walk away. Officer Parson shouted to Mr. Bowyer: "Markell, don't you walk away from me! Markell, come here!" Mr. Bowyer continued to walk away. Officer Parson grabbed Mr. Kpodi and placed him on the front of the police car. Officer Parson called for assistance, and other officers arrived to help search for Mr. Bowyer. Officer Parson examined the spot

where Defendant Kpodi placed the object and found that it was a fully loaded Bryco semi-automatic 9mm pistol. After the gun was recovered, Mr. Kpodi was placed under arrest. Subsequently, Mr. Bowyer was located lying on the ground in some prickly shrubs at the corner of the next building. As the police officers were attempting to get Mr. Bowyer out of the bushes, one of them asked Mr. Bowyer why he was in the bushes. Mr. Bowyer responded that he was "just chillin.'" After the officers removed Mr. Bowyer from the bushes and Officer Parson identified him, Mr. Bowyer was arrested and placed into a police transport.

While Mr. Bowyer was in the transport, Officer Parson was talking to another officer. Mr. Bowyer, in an attempt to get Officer Parson's attention, shouted: "Hey Parson, they were just shooting at me on Rock Creek Church Road." Then, after seeing the officers outside with the gun, Mr. Bowyer said: "You're not going to put this one on me. Shit, man. I can't be going through this." All these statements were made before Mr. Bowyer was read his *Miranda* rights

Defendant Bowyer was indicted for unlawful possession of a firearm by a convicted felon and unlawful possession of ammunition by a convicted felon, both in violation of 18 U.S.C. § 922(g)(1). The indictment charged Defendant Kpodi with carrying a pistol without a license, in violation with 22 D.C.Code § 3204(a).

## II. ANALYSIS AND DISCUSSION

### A. Firearm and Ammunition Counts

■ Defendant Bowyer is charged with both unlawful possession of a firearm by a convicted felon and unlawful possession of ammunition by a convicted felon. Defendant Bowyer argues that these two counts are multiplicitous—namely, that both of these counts charge him with the same offense. Multiplicitous charges "improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes." *United States v. Reed,* 639 F.2d 896, 904 (2d Cir.1981). "An indictment is multiplicitous, and thereby defective, if a single offense is alleged in a number of counts, unfairly increasing a defendant's exposure to criminal sanctions." *United States v. Anderson,* 39 F.3d 331, 353–54 (D.C.Cir.1994) (citation omitted). Defendant argues that the proper remedy is to require the government to elect between the multiplicitous counts. *See United States v. Bradsby,* 628 F.2d 901, 905 (5th Cir.1980). In support of his position, Defendant Bowyer cites Judge Friedman's recent decision in *United States v. Phillips,* 962 F.Supp. 200 (D.D.C.1997). There, the court held that when a defendant is charged separately with unlawful possession of a firearm and of ammunition based on the single possession of a loaded firearm, the government must be compelled to elect between the charges: "The government argues against pre-trial election, suggesting a merger of the counts at sentencing. As Judge Hogan pointed out in *Kinlaw,* however, '[i]f the Court were to adopt the government's logic then there would never be any need to force an election of counts.'" *Id.* at 202 (citing *United States v. Kinlaw* (slip op. at 3 n. 2)).

The Court cannot declare unequivocally that in every case where the Defendant alleges that there exist multiplicitous charges, the appropriate way to proceed is through pretrial election. This decision is within the discretion of the court, *see United States v. Throneburg,* 921 F.2d 654, 656–57 (6th Cir. 1990), and as with any discretionary determination, it is difficult, if not impossible, to construct an abstract formula for deciding one way or another. Each case is different and unique in its own way.

■ In this case, the Court believes that the way to proceed is to deal with the issue at sentencing. The two charges are not multiplicitous because they involve separate offenses. The test for determining whether two counts of an indictment are multiplicitous is set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932): "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each [count] requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. at 182. The government may prosecute violations of different subsec-

tions of the same statute provided that each charge can satisfy the *Blockburger* test. *See, e.g., United States v. Nation*, 832 F.2d 71 (5th Cir.1987) (charging violations of 18 U.S.C. § 922(g) and 18 U.S.C. § 922(i) arising from the same incident); *United States v. Goodheim*, 686 F.2d 776, 780 (9th Cir.1982) ("[U]nder the rule of *Blockburger*, sections 922(a)(1) and 922(h)(1) constitute separate offenses which may be punished consecutively.").

This case involves two crimes charged under the same statutory provision, 18 U.S.C. § 922(g)(1). Pursuant to § 922(g)(1): "It shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The statute defines two separate crimes: (1) the possession of any firearm; and (2) the possession of ammunition. These two crimes require proof of different elements. It is a crime for a defendant to be in possession of a firearm without ammunition or ammunition without a firearm. A firearm and ammunition are two distinct forms of illegal contraband when possessed by a convicted felon. Thus, the *Blockburger* test is met in this case.

### B. Motion to Suppress Evidence

Defendants move the Court to suppress physical evidence and statements because they are the tainted fruit of an illegal arrest. Mr. Bowyer further moves the Court to suppress his statements made before and after his arrest because they were in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

### 1. Probable Cause to Arrest

■ Both of the Defendants were arrested without a warrant. According to the Court in *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), the police can make arrests in public areas without a warrant so long as there is sufficient probable cause. In warrantless arrests, the government bears the burden of proving that the arrests were legal. *See Hayes v. Florida*, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985). Defendants allege that the police lacked probable cause to arrest them.

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). "Probable cause exists where 'the facts and circumstances within [the police's] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949).

■ In this case, the Court finds sufficient probable cause for arrest. Officer Parson was responding to a tip about frequent drug activity in a specific location. As he was patrolling the area, he observed behavior by Mr. Bowyer and Mr. Kpodi that appeared extremely suspicious. He observed them for some time and witnessed them exchange an object and place it in the weeds near a building. When he approached them to find out what was going on, Mr. Bowyer fled. Based upon the tip about drug activity and the conduct he observed in an alleyway during the early morning hours, Officer Parson certainly had a reasonable belief that a crime was being committed. Further, the firearm which Officer Parson had seen passed between the Defendants now was in open view in the weeds near the building. Thus, Officer Parson had ample probable cause to arrest both Defendants.

### 2. *Miranda* Issue

Defendant Bowyer contends that the statements which he made before he was arrested must be suppressed because they were made in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). At issue are three statements made by Mr. Bowyer: (1) the statement that he was "just chillin'" made while he was lying in the bushes; (2) the statement, made in the patrol

car: "Hey Parson, they were just shooting at me on Rock Creek Church Road"; and (3) the statement, also made in the patrol car: "You're not going to put this one on me. Shit, man. I can't be going through this."

■ *Miranda* rights only attach during custodial interrogation. *See Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (*Miranda* rights do not attach until a defendant is in custody); *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (*Miranda* rights do not attach until a defendant is interrogated). Mr. Bowyer was in custody at the times when be made all of the statements in question. The test for custody is whether a reasonable person in defendant's position would have believed himself unfree in a significant manner. *See Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). His first statement was made while he was lying in the bushes and surrounded by police officers; his other statements were made while he was in the back of the patrol car. During these times, he was certainly not free to leave.

■ However, even if a defendant is in custody, *Miranda* rights do not attach until a defendant is interrogated. According to *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), interrogation refers to "any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."

■ Mr. Bowyer argues that his statement that he was "just chillin' " made while lying in the bushes should be suppressed because the police officers asked him "What are you doing in there?" This, however, does not amount to interrogation. *Miranda* does not go so far as to prevent police officers from talking at all to a suspect. In this instance, the police officer's question seems to be a normal question to ask. It is rather unusual to find a person lying in prickly bushes in the early morning hours. Mr. Bowyer could have been injured. There may have been a dangerous individual stalking Mr. Bowyer. The question asked to Mr. Bowyer was not a question that sought incriminating information; rather, it was an attempt to ascertain what was going on in an unusual and potentially dangerous situation.

■ Mr. Bowyer also argues that the statements he uttered while in the back of the police transport were made in violation of *Miranda*. Mr. Bowyer's statement, "Hey Parson, they were just shooting at me on Rock Creek Church Road," was made while Officer Parson was talking to another police officer. Mr. Bowyer's statement, "You're not going to put this one on me. Shit, man. I can't be going through this," was made after Mr. Bowyer observed police officers outside the police transport handling the firearm he allegedly possessed. These statements were made spontaneously and under no coercion or pressure from the police officers. Mr. Bowyer was blurting out statements in an attempt to gain the attention of Officer Parson and in reaction to seeing the gun. As a result, they were purely voluntary and were not made during interrogation.

## C. Evidence of Defendant's Prior Felony Conviction

■ Defendant Bowyer also moves the Court to prevent the government from offering evidence of the Defendant's prior felony conviction. Defendant claims that informing the jury of his prior felony conviction would result in unfair prejudice. The Defendant argues that the Court is not constitutionally nor statutorily required to submit all of the elements of the offense to the jury, and should exclude the submission of the prior felony conviction.

· The Court disagrees with Defendant's argument. The existence of a prior felony conviction is an element of the offenses charged under § 922(g)(1). "The jury must always be informed of the full nature, including each element, of the charged crime." *United States v. Fennell*, 53 F.3d 1296, 1302 (D.C.Cir.1995). Accordingly, the jury is entitled to learn about the existence of the prior felony conviction. It is hoped that the parties will agree to a process that would make this information as nonprejudicial as possible.

An appropriate order accompanies this opinion.

### ORDER

For the reasons stated in the Court's Memorandum Opinion, it is hereby

**ORDERED** that Defendants' motions: (1) to compel election between multiplicitous firearm and ammunition counts; (2) to suppress tangible evidence; and (3) to prevent government from offering evidence of Defendant's prior felony conviction be **DENIED.**