NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1816
_____

P.T. MINE SERVICES, INC.;
STATE WORKERS INSURANCE
FUND OF PENNSYLVANIA,
Petitioners

v.

DIRECTOR, OWCP,
UNITED STATES DEPARTMENT OF LABOR;
JOSEPH F. YURICK,
Respondents
_____

Petition for Review of an Order of the
United States Department of Labor
Benefits Review Board
(BRB-1:09-0197 BLA)
Administrative Law Judge:  Honorable Michael P. Lesniak
_____

Argued December 15, 2010

Before: RENDELL, JORDAN and HARDIMAN, <u>Circuit</u> <u>Judges</u>

(Opinion Filed  January 5, 2011)
_____

Edward K. Dixon, Esq.    **[ARGUED]**
Ryan M. Krescanko, Esq.
Zimmer Kunz
600 Grant Street
3300 USX Tower
Pittsburg, PA  15219
    *Counsel for Petitioner*

Cheryl C. Cowen, Esq.　　[**ARGUED**]
769 Lippencott Road
Waynesburg, PA  15370
  *Counsel for Respondent*
  *Joseph F. Yurick*

Matthew Bernt, Esq.　　[**ARGUED**]
Rae Ellen James, Esq.
Patricia M. Nece, Esq.
United States Department of Labor
Office of the Solicitor
Room N-2117
200 Constitution Avenue, N.W.
Washington, DC  20210
  *Counsel for Respondent*
  *Director, OWCP,*
  *United States Department of Labor*

_____

OPINION OF THE COURT
_____

RENDELL, <u>Circuit Judge</u>.

P.T. Mine Services, Inc. petitions for review of a decision by the Department of Labor's Benefits Review Board ("BRB") affirming decisions of an administrative law judge ("ALJ") awarding disability benefits to Joseph Yurick under the Black Lung Benefits Act and determining that P.T. Mine is the "responsible operator" with respect to Yurick's benefits.  P.T. Mine raises three issues:  (1) whether the ALJ and BRB should have determined that Apolo Construction Company, not P.T. Mine, was the "responsible operator" liable for Yurick's benefits; (2) whether the ALJ improperly admitted evidence in excess of the applicable evidentiary regulations; and (3) whether the ALJ improperly disregarded P.T. Mine's digital x-ray evidence.

2

"We review the decisions of the [Benefits Review] Board for errors of law and to assure that it has adhered to its own standard of review." *BethEnergy Mines, Inc. v. Director, OWCP*, 39 F.3d 458, 462-63 (3d Cir. 1994) (citation omitted). Our review of the BRB's legal determinations, including its interpretation of the applicable regulations, is plenary. *Id.* at 463; *see also Director, OWCP v. Gardner*, 882 F.2d 67, 68 (3d Cir. 1989). Where a party challenges a finding of fact by the BRB or ALJ, we "independently review the record and decide whether the Administrative Law Judge's findings are supported by substantial evidence." *Kowalchick v. Director, OWCP*, 893 F.2d 615, 619-20 (3d Cir. 1990) (internal quotation marks and citations omitted). Because we agree with the BRB's application of the relevant "responsible operator" and evidentiary regulations, and because substantial evidence supports the BRB's decision regarding P.T. Mine's digital x-ray evidence, we will deny the petition for review.

## I.

P.T. Mine first argues that the BRB erred in concluding that P.T. Mine, rather than another company that employed Yurick, Apolo Construction Company, is the "responsible operator" in Yurick's case. The "responsible operator" is "[t]he operator responsible for the payment of benefits" due under the Black Lung Benefits Act. 20 C.F.R. § 725.495(a)(1). The relevant regulations define a "responsible operator" as "the potentially liable operator . . . that most recently employed the miner." *Id.* Apolo employed Yurick more recently than P.T. Mine; therefore, if Apolo qualifies as a "potentially liable operator" under the regulations, Apolo is the "responsible operator" in

3

Yurick's case. P.T. Mine concedes that if Apolo does not qualify as a "potentially liable operator," P.T. Mine is liable for Yurick's benefits.

Whether Apolo is a "potentially liable operator" depends in relevant part on whether Yurick "was employed" by Apolo "for a cumulative period of not less than one year." 20 C.F.R. § 725.494(c). An "employment relationship" under the regulations is "any relationship under which an operator retains the right to direct, control, or supervise the work performed by a miner, or any other relationship under which an operator derives a benefit from the work performed by a miner." 20 C.F.R. § 725.493(a)(1). The regulations define a "year" for these purposes as follows:

> Year means a period of one calendar year (365 days, or 366 days if one of the days is February 29), or partial periods totaling one year, during which the miner worked in or around a coal mine or mines for at least 125 'working days.' A 'working day' means any day or part of a day for which a miner received pay for work as a miner, but shall not include any day for which the miner received pay while on an approved absence, such as vacation or sick leave. In determining whether a miner worked for one year, any day for which the miner received pay while on an approved absence, such as vacation or sick leave, may be counted as part of the calendar year and as partial periods totaling one year.

20 C.F.R. § 725.101(a)(32).

Yurick began working for Apolo on October 2, 2000; his last day of work with Apolo was October 5, 2001. From August 16, 2001 to September 15, 2001, Yurick was laid off from Apolo because of a slowdown in work. Yurick was not paid by Apolo during that time; he collected unemployment benefits. Because he believed that he would be recalled to work at Apolo, Yurick did not look for other work during the layoff period.

4

At the same time, Yurick retained his seniority at Apolo and allegedly did not lose his entitlements to health insurance or to participate in Apolo's 401(k) plan. He was not required to reapply for his job with Apolo when the layoff ended.

Reviewing these facts, the BRB affirmed the ALJ's determination that Yurick was not employed by Apolo for the requisite one-year period. Specifically, the BRB found that substantial evidence, including the facts that Yurick was not paid by Apolo, that he received unemployment benefits, and that he was free to seek other employment during the layoff period, supported the ALJ's determination that the layoff severed Yurick's employment relationship with Apolo.

We agree. The ALJ's and BRB's determinations that the layoff period severed Yurick's employment relationship with Apolo are reasonable in light of the law and the facts. P.T. Mine's argument to the contrary — that Yurick's layoff was an "approved absence" from Apolo — does not convince us otherwise. The regulations allow the fact-finder to count "approved absences" toward the 365-day period, but only to the extent that the miner "received pay" for such absences. 20 C.F.R. § 725.101(a)(32); *see also* 62 Fed. Reg. 3,338, 3,349 (Jan. 22, 1997) (Department of Labor guidance contrasting approved absences, "such as vacation or sick leave," with "[o]ther absences, such as the time during a strike or layoff"). P.T. Mine has not pointed to any authority that indicates that the BRB and ALJ were permitted, much less required, to include time for which the miner did no work for and was not paid by the employer and, indeed, received unemployment compensation, in the 365-day period. Thus, the ALJ and BRB did not err

5

in determining that P.T. Mine, not Apolo, is the "responsible operator" with respect to Yurick's claim.

## II.

P.T. Mine next argues that the ALJ erred in admitting "cumulative chest x-ray evidence" in excess of that allowed under the regulations during the merits phase of the benefits proceedings. Its argument fails.

The pertinent regulations provide that a Black Lung Benefits Act claimant may submit, "in support of his affirmative case, no more than two chest X-ray interpretations." 20 C.F.R. § 725.414(a)(2)(i). The regulations provide further that "[n]otwithstanding" the x-ray evidence limits, "any record of a miner's . . . medical treatment for a respiratory or pulmonary or related disease, may be received into evidence." 20 C.F.R. § 725.414(a)(4). In other words, an ALJ may admit x-ray evidence in excess of the two interpretations ordinarily allowed under the rules when such evidence is part of a "record of a miner's . . . medical treatment." *Id.*

Yurick submitted two chest x-ray interpretations by Dr. Afzal Ahmed in support of his affirmative case and two chest x-ray interpretations by Dr. Shyam Gohel as part of the records of his treatment at a pulmonary clinic. P.T. Mine argues that the ALJ's admission of the Gohel x-ray interpretations violated the evidence-limiting regulations. But record evidence established that Yurick underwent the x-rays in the course of his treatment and that the x-ray interpretations were compiled and kept in the ordinary course of the clinic's business, not in anticipation of litigation, and P.T. Mine has not argued otherwise. Because the Gohel x-ray interpretations were part of a record of Yurick's

6

treatment, they were admissible under the medical-records exception to the evidence-limiting regulations.[1] Thus, the ALJ properly admitted the Gohel x-ray interpretations and the BRB properly affirmed the decision of the ALJ.

## III.

Finally, P.T. Mine argues that the ALJ and BRB declined to afford sufficient weight to digital x-ray evidence it submitted in connection with the opinion of its expert, Dr. Gregory Fino. Digital x-rays are admissible as "other medical evidence" in black-lung benefits proceedings, but the proponent of such x-rays "bears the burden to demonstrate that" such x-rays are "medically acceptable and relevant to establishing or refuting a claimant's entitlement to benefits." 20 C.F.R. § 718.107(b). P.T. Mine asserts that the ALJ failed to analyze Dr. Fino's digital x-ray and failed to make an independent determination of the x-ray's relevance.

P.T. Mine's argument on this point is simply at odds with the record. The ALJ considered Dr. Fino's digital x-ray evidence as "other medical evidence," but determined that the digital x-ray was entitled to "less weight due to the lack of quality standards in the regulations for the reading of digital x-rays." That determination was supported by substantial record evidence in the form of testimony by another doctor concerning the

---

[1] P.T. Mine's further argument, that the ALJ should have determined whether there was "good cause" to admit the Gohel x-ray interpretations, also fails. The regulations require a determination of "good cause" before admitting x-ray evidence only to the extent that such evidence is "in excess of the limitations contained in § 725.414." 20 C.F.R. § 725.456(b)(1). The Gohel x-ray interpretations are not "in excess of the limitations contained in § 725.414"; they fall squarely within the terms of § 725.414(a)(4). Therefore, they are not subject to the "good cause" requirement.

potential unreliability of diagnoses of black-lung disease from digital x-rays. We discern no error in the ALJ's approach.

## IV.

For the foregoing reasons, we will deny the petition for review.